WILLIAM A. BENTLEY *vs.* BOARD OF COUNTY COMMISSIONERS
OF CHISAGO COUNTY.

September 20, 1878.

County Commissioners—Medical Attendance on Pauper.—A contract of em-
ployment, made by a single county commissioner with a physician,
for professional services to be rendered to a sick pauper entitled to re-
lief from the county of such commissioner, is unauthorized by the pro-
visions of Gen. St. c. 15, and not obligatory on the county.

Action to recover for services rendered by plaintiff as a
physician in attending certain poor persons, at their residences
in Chisago county. At the trial in the district court for that
county, before *Crosby*, J., the plaintiff, under objection and
exception by defendant, proved that in each case the services
for which he seeks to recover were rendered on the written
request of one of the board of commissioners of the defend-
ant county. No other evidence of employment of plaintiff
by defendant was offered. The defendant offered to prove
that, at the time such services were rendered, another person
was the regularly appointed and acting county physician of
the defendant. The evidence was excluded, on plaintiff's ob-
jection, and the defendant excepted. The defendant requested
the court to instruct the jury that the defendant incurred no
liability for the services rendered by the plaintiff under such
requests from individual commissioners, which was refused,
and the defendant excepted. The jury found for the plaintiff,
a new trial was refused, and the defendant appealed.

*H. N. Setzer*, for appellant.

*McCluer & Marsh*, for respondent.

CORNELL, J. The exceptions taken in this case raise the
question whether, under Gen. St. c. 15, a single county com-
missioner has authority to employ a physician, other than
the county physician, for a sick pauper who has a legal set-
tlement in the county, and is entitled to public relief, and to
bind the county for the payment of a reasonable compensa-

tion for the medical and professional services rendered under
such employment.

We are referred to sections three and five of this chapter,
as containing the requisite authority. The former has no
reference whatever to any of the duties or powers of the
county commissioners, whether acting together as a board,
or separately and singly as independent officers. It simply
declares when, and under what circumstances, paupers shall
become a charge upon the county, and how their mainte-
nance and support shall be borne and provided for out of the
county treasury. Section five enacts that the county commis-
sioners shall, by virtue of their office, be superintendents of
the poor of their respective counties, and that they shall take
charge of the poor supported at public expense therein, and
have the management of any poor-house, farm, work-house,
or other place provided for the accommodation, support, or
employment of the poor therein. The duty enjoined by this
section is a joint one, requiring in its performance the action
of the county commissioners as a board, and the same is true
as to the authority which it confers. No single commissioner
can take upon himself alone the separate charge of the county
poor, nor the separate management of the poor-house or other
property mentioned in this section. It is plain that neither
of these sections confers any authority such as is claimed in
this case, and if it exists, it must be found in some other pro-
vision of the statute.

The only sections of this chapter containing any provisions
relating to the powers or duties of county commissioners as
superintendents of the poor, and as separate and independent
officers, are sections ten, twelve, fifteen and seventeen. As
the last two relate to matters wholly distinct from those
embraced in the case before us, their provisions need not be
considered, and the same may be said of section ten, which
makes it the duty of the county physician to attend and pre-
scribe for all sick poor persons in said county requiring medi-

cal aid, etc., upon the written direction of any county commissioner of the county.

By the provisions of section twelve, each commissioner is authorized to hear and decide upon applications for county support and relief arising in his own district. and in every case when the person by or in whose behalf any such application is made is found to be legally entitled to relief and support from the county as a pauper having a legal settlement therein, such commissioner is authorized and directed to give an order, in the form prescribed, entitling such person to be received into the charge of the overseer of the poor of the county, and to be furnished with suitable support, until the further order of the board of county commissioners of said county; and it is further provided that if the commissioner to whom any such application is made shall, upon inquiry, be of opinion that only temporary and limited assistance, to an extent not exceeding twenty dollars, will be required by such poor person, and that it will be for the interest of the county to grant it, he may, within such limits, instead of making such order, allow the applicant a definite sum for temporary relief, in which case he is directed to make a written certificate of such allowance, signed by him officially, specifying therein the sum allowed, and the name and residence of the person to whom the same is granted. This certificate entitles such person to an order from the county auditor upon the county treasurer for the amount, payable out of the county poor fund. In case the commissioner deems such pauper an unsafe person to entrust with the expenditure of the money, he is also authorized himself to present the certificate, receive the order, and draw the money, and expend it in such way as he may deem most beneficial to such poor person, accounting therefor to the county board. The powers given by this section are all specifically defined, and the mode and manner in which they shall be exercised are also particularly pointed out. They

cannot be enlarged or extended, by intendment or implication, to embrace matters not named or necessarily included therein, nor can they be exercised in any other than the prescribed mode. It follows that no county commissioner, under any powers conferred by this section, can enter into any contract for employment for medical services for any pauper, that shall be binding or obligatory upon the county. Although the money which may be obtained upon a certificate of allowance and order for temporary relief may be expended in procuring medical services, if deemed advisable, there is no authority given for procuring them upon the credit of the county. The system provided by this chapter contemplates that all professional services of this kind shall be rendered by a county physician for the poor, to be appointed by the board of county commissioners, who holds this office during the pleasure of the board, and receives such compensation for his services as may be determined upon by them, as a board, from time to time. Gen. St. c. 15, § 10. A county commissioner has no authority to employ, upon the credit of his county, a physician not thus appointed; and if he does, the unauthorized employment will create no liability against the county. Though the plaintiff in this case may have acted in good faith in relying upon the certificates and the requests therein contained, this furnishes no ground for his claim against the county, for the law imputes to him full knowledge that the officer with whom he dealt had no authority in the premises.

Order reversed.