(December 10, 1901.)

## CASTLE v. BANNOCK COUNTY.
### [67 Pac. 35.]

EMPLOYMENT OF PHYSICIAN BY COUNTY—INDIVIDUAL MEMBERS OF BOARD NOT AUTHORIZED.—An individual member of the board of county commissioners cannot employ a physician to care for smallpox patients at expense of the county.

(Syllabus by the court.)

APPEAL from District Court, Bannock County.

Attorney General Frank Martin, for Appellant.

Boards of county commissioners are entireties and can only act collectively and as empowered by law. (*Rankin v. Jauman,*

4 Idaho, 394, 39 Pac. 1111; *Conger v. Commissioners,* 5 Idaho, 347, 48 Pac. 1064.)

W. T. Reeves and Hawley & Puckett, for Respondent.

Our claim is that this bill of respondent was created under the provisions of section 1150 to 1153 inclusive, and that being a part of the expense of the board of health as a majority of the officers who under the law constitute the board, the same became and is a charge against Bannock county, and should be paid as provided under section 1154 of the Revised Statutes of Idaho. (*Elliott v. Kalkaska Supervisors,* 58 Mich. 452, 55 Am. Rep. 707 et seq.; *Labrie v. Manchester,* 59 N. H. 120, 47 Am. Rep. 179 et seq.; *Commissioners of Tippecanoe Co. v. Mitchell,* 131 Ind. 370, 30 N. E. 409; *Evans v. City,* 24 N. J. L. 764; *Detroit v. Redfield,* 19 Mich. 376; *McBride v. Grand Rapids,* 47 Mich. 236, 10 N. W. 353; *United States v. Brindle,* 110 U. S. 688, 4 Sup. Ct. Rep. 180; *State v. Hauset,* 63 Ind. 155; *Vanardsdall v. State,* 65 Ind. 176; *Crow v. Board,* 118 Ind. 51, 20 N. E. 642; *Board v. Bunting,* 111 Ind. 144, 12 N. E. 151; *Shannon v. O'Boyle,* 51 Ind. 565; *Board v. Saunders,* 17 Ind. 437; *State v. Clark,* 4 Ind. 315; *Hoffman v. Board,* 96 Ind. 84; *Garrett v. Board,* 92 Ind. 518; *Boggs v. Caldwell,* 28 Mo. 586.)

STOCKSLAGER, J.—On the eleventh day of January, 1901, respondent presented his bill to the board of county commissioners of Bannock county for the sum of $330.60. On the twenty-sixth day of January, 1901, the board of county commissioners passed upon said bill, allowing respondent sixty dollars and sixty cents, and disallowing the balance in the sum of $270. Respondent appealed to the district court of said county. On the fifteenth day of March, 1901, findings of fact and conclusions of law were filed, and on the same day judgment was entered reversing the action of the board of county commissioners of said county. From this judgment appellant appeals to this court, and assigns errors: 1. In finding, as a matter of fact, that Frank M. Watson was, in April, 1900, purchasing agent of Bannock county, under the order of the board of county commissioners made and entered Janu-

ary 14, 1898; 2. Error in holding that the claim disallowed by the board of county commissioners was a legal and proper charge against Bannock county; 3. In reversing the action of the board of county commissioners and ordering judgment for respondent. The record discloses the following facts: On the eighteenth day of January, 1897, the board of county commissioners of Bannock county entered into a contract with respondent, to wit:

"This agreement, made and entered into this eighteenth day of January, in the year of our Lord one thousand eight hundred and ninety-seven, between Bannock county, of the state of Idaho, the party of the first part, and Hubert A. Castle, M.D., of the city of Pocatello, of the county of Bannock, of the state of Idaho, the party of the second part, witnesseth: That in consideration of the agreements and covenants of the party of the second part, as hereinafter specially set out, the party of the first part hereby covenants and agrees to and with the party of the second part to pay him the full sum of four hundred dollars ($400.00) per year for the term of two years from the eighteenth day of January, A. D. 1897, payable at the end of each and every quarter, and to furnish him or to allow him the actual expenses of transportation to all points in Bannock county more than one mile outside of Pocatello City, for his services and total compensation in giving surgical and medical attendance and doing and performing all things necessary in the cases of indigents and paupers whomsoever that may or shall become a charge upon said county during the years of grace 1897 and 1898. And in consideration of the undertaking and agreements hereinbefore expressed, on the part of the party of the first part, the said party of the second part hereby specifically covenants and agrees to and with the said party of the first part as follows, to wit: That he, as a duly licensed and practicing physician and surgeon, will, during and for the years 1897 and 1898, attend promptly to all cases of sickness, accident, and injury happening indigents, paupers, and all persons whomsoever that may or shall become a charge upon said Bannock county, when notified of such cases, either by any member of the board of county commissioners, or the clerk of

the board, or the keeper, or superintendent of the poor farm, or the probate judge, or any duly acting justice of the peace, or other authorized person, and that he will furnish at his own proper cost and expense all the medicine and medicines, bandages, medical dressings, drugs, lotions, and all things whatsoever that may or shall become necessary in the treatment of any and all cases under his contract; and the said party of the second part hereby agrees that his full compensation for all such services shall be the sum of four hundred dollars per annum for each of said years 1897 and 1898, and transportation, or actual cost thereof, as heretofore stated. In witness whereof, the parties above named have hereunto set their hands and seals the day and year first above written.

   "BANNOCK COUNTY OF THE STATE OF IDAHO,
     "By FRANK M. WATSON,
"Chairman of the Board of County Commissioners of Said County.
 "[Seal]      .  H. A. CASTLE.
"Witness: THEO. TURNER."

No other contract appears in the record, and the trial court finds that it is the only written contract ever entered into between the county commissioners and respondent. On January 11, 1898, the board of county commissioners caused to be entered in their minutes the following entry: "In the matter of contracting for medical attendance, etc., of indigent persons: The said matter coming on to be considered by the board, and the same being duly considered, it is ordered that H. A. Castle, M. D., be, and he is hereby, employed and authorized to furnish all indigent persons who are properly and legally county charges, and to the inmates of the county jail, all necessary medical attendance, medicines, medical and surgical dressings, etc., for which he shall receive as compensation in full the sum of four hundred dollars per annum, to be paid quarterly, by a warrant drawn upon the current expense fund of Bannock county. It is further ordered that the term of such employment be one year from and after this day. It is further ordered that the chairman of the board, Frank M. Watson, Esq.,

for and on behalf of the county, enter into a contract in writing with the said H. A. Castle, M. D., which said contract shall set forth in detail the terms, time, and all the conditions of such employment." The record does not disclose that any such contract was ever entered into, and the trial court finds that no such contract was ever made. By the record it is shown that Dr. H. A. Castle, respondent, continued to perform the duties of county physician for Bannock county from the time he entered into the contract to the close of and including the year 1890, presenting his bills to the county, as provided for in the contract, and the county, through its legally authorized agents, the board of county commissioners, paying them as provided for in said contract. On the fourteenth day of January, 1898, the board of county commissioners made and caused to be entered the following order in their minutes: "In the matter of appointing a purchasing agent for the county: It appearing to the board that in the interim between the regular sessions of the board certain contingent expenses must be incurred, and certain supplies purchased for the use of the county, it is hereby ordered that the chairman of the board, Frank M. Watson, Esq., be, and he is hereby, appointed purchasing agent for the county during such interim between sessions for the year 1898, and until the further order of the board, and whenever anything is purchased or ordered the said chairman, as such purchasing agent, shall make an order in writing for the same, and in all cases said order shall be attached to the bill or claim for such supplies so ordered, and be returned to the board when the bill or claim shall be presented for allowance." Prior to the month of February, 1900, smallpox broke out in said county, there being cases in Pocatello and elsewhere in the county. The board of county commissioners met in regular sessions in April, July, and October, but no attempt was made to organize a board of health, and none was organized in the year 1890.

The court finds that in the month of April, 1900, Frank M. Watson, who was chairman of the board of county commissioners and purchasing agent for the county, instructed Dr. Castle to look after smallpox patients, and told him that the county

would pay him for such services. The ninth finding is that some time in April, 1900, Frank M. Watson, who was at the time chairman of the board of county commissioners and purchasing agent under the order of the board, mentioned in finding 6, instructed H. A. Castle to look after smallpox patients in the county, and that the board would pay for the services, and some time in the month of November Frank M. Watson, as such chairman of the board, and as such purchasing agent, caused a building to be erected under the direction of H. A. Castle for the purpose of caring for the smallpox patients, the construction of which was afterward paid for by the board of county commissioners, and the board of commissioners allowed bills for food and clothing furnished the patients at such building, but disallowed the bill in question, and the bill for medicine and drugs. The tenth finding of the trial court is "that persons taken to the said building with smallpox were mostly transient, and persons who worked for the Oregon Short Line Railroad Company, who were found upon the streets with the disease, and had no residence in the city of Pocatello or in the county of Bannock; one being the proprietor of a lodging-house in the city of Pocatello, and was taken from his house to the building above mentioned. They were all taken there under the direction of H. A. Castle," the appellee. Counsel for appellant contend that Frank M. Watson had no power or authority to employ or authorize respondent to look after smallpox patients in the year 1890 in Bannock county, either by reason of his position as chairman of the board of county commissioners of said county, or by reason of the order made by the board of county commissioners on January 14, 1898, appointing him purchasing agent of said county. It is urged that the order appointing said Watson purchasing agent of the county could not extend beyond the life of the board which made it, and that said board was not in existence in April, 1890, of which fact this court will take judicial notice, and cites subdivisions 2, 3, section 5950 of the Revised Statutes. Subdivision 2 says: "Whatever is established by law." Subdivision 3 says: "Public and private official acts of the legislative, executive and judicial departments of this territory and

of the United States." That this court will take judicial notice that the term of office of the county commissioners, who were in office in Bannock county on January 14, 1898, expired on the second Monday of January, 1899, he cites section 1747 of the Revised Statutes, which says: "The term of office of a commissioner is two years." He also calls our attention to page 34, section 7, and page 67, section 4, of the Session Laws of 1899, to the same effect. That the contract could not be enforced against the county, he cites *Conger v. Commissioners,* 5 Idaho, 347, 48 Pac. 1064; *Gorman v. Commissioners,* 1 Idaho, 553; *Rankin v. Jauman,* 4 Idaho, 394, 39 Pac. 1111. That respondent was charged with knowledge that Watson could make no contract with him that would bind the county, he cites *Lebcher v. Board,* 9 Mont. 315, 23 Pac. 713. It says, "One contracting with county commissioners is charged with knowledge of the limits of their authority." Under his contention that respondent either rendered the services under the terms of his old contract, which had impliedly been kept alive by the consent and actions of each party, and was paid for his services in his regular allowance, or else he rendered such services without any legal contract or agreement, and voluntarily, and cannot be paid therefor, he cites *Johnson v. Santa Clara Co.,* 28 Cal. 545; *Hampton v. Commissioners,* 4 Idaho, 646, 43 Pac. 324; *Kellogg v. Supervisors,* 42 Wis. 97; *Murphy v. Napa Co.,* 20 Cal. 503.

Counsel for respondent contends that the bill of respondent was created under the provisions of sections 1150-1154 of the Revised Statutes, and that, being a part of the expenses of the board of health as a majority of the officers who under the law constitute the board, the same became and is a charge against Bannock county, and should be paid as provided under section 1154 of the Revised Statutes. The five sections referred to read:

"Sec. 1150. The board of county commissioners of each county must, biennially at their regular meeting in January, appoint one intelligent person residing in the county, who must be an experienced and skillful physician, and the person so appointed, together with such board of county commissioners, con-

stitute a county board of health for the term of two (2) years, or until successors be appointed and qualified. Any vacancy in such board of health, caused by the death or resignation of such physician or by his refusal to act as a member thereof, must be filled by appointment by the commissioners. If any county has a physician employed to care for the indigent sick of such county, such physician must be appointed by the board of commissioners as a member of the board of health.

"Sec. 1151. Said county board of health must make and establish for their county, or any district or place therein, such sanitary rules and regulations as they may deem necessary and proper to prevent the outbreak and spread of contagious and infectious diseases; and any person failing or refusing to comply with or obey said rules and regulations of said boards is guilty of a misdemeanor.

"Sec. 1152. It is the duty of every practicing physician to report promptly to the county board of health, of the county in which he resides all or any disease of an infectious or contagious nature under treatment by him, and said board must at once take the necessary precaution to prevent the spread of such contagious or infectious disease.

"Sec. 1153. The board of health of any county may declare a quarantine therein or in any particular district or place therein against the introduction of any contagious or infectious disease prevailing in any state, territory, county or place, and of any and all persons and things liable to spread such contagion and infection. The said county board has authority and power to enforce such quarantine until the same is raised by themselves, and may confine such afflicted person or persons liable to spread such contagion or infection to the house or premises in which he or she resides, or if such persons have no residence in the county, to a place to be provided by them for the purpose.

"Sec. 1154. All necessary expense incurred by the said county board of health in enforcing the provisions of this act must be paid for out of the treasury from the current expense fund of the county."

In support of this contention counsel cites: *Elliott v. Supervisors,* 58 Mich. 452, 55 Am. Rep. 707. This is a Michigan case, and holds that a township board of health, authorized to guard against smallpox, may contract for nursing patients and destroying infected clothing. *Labrie v. City of Manchester,* 59 N. H. 120, 47 Am. Rep. 178, cited by respondent, holds that, where health officers of a city are empowered to remove persons infected with smallpox and helpless to a pesthouse, they have implied authority to employ nurses for them at the expense of the city. *Board v. Bunting,* 111 Ind. 143, 12 N. E. 151, holds that the board of county commissioners has authority to build a jail and a sheriff's residence in connection therewith. In *Evans v. Inhabitants of City of Trenton,* 24 N. J. 764, it is said an officer of a municipal corporation, who receives a fixed salary, must perform all the duties of his office for that salary, however inadequate, and cannot recover extra compensation, even if promised it by a committee or individual members of the corporation. But for services performed by request, not part of the duties of his office, and which could have been as appropriately performed by any other person, he may recover a proper remuneration. In *McBride v. City of Grand Rapids,* 47 Mich. 236, 10 N. W. 353, it is held that a city officer is entitled to be paid for acts done under appointment of the common council outside of his official duty. Counsel for respondent cites a number of cases from Indiana and other states, with similar holdings as above quoted, but we are unable to find one that goes as far as he contends for in this case. It will be observed, by reading the authorities cited, that the board of county commissioners, or the city council of a city, are empowered to do certain things, but nowhere do we find in the citations that an individual member of the board of county commissioners, or a member of a city council can make a contract and thereby create an obligation binding upon the county or city. It is urged by the able counsel who represents the respondent here that when smallpox was found in Pocatello and elsewhere in Bannock county it was the duty of the officers to act promptly, and take all necessary steps to check the disease.

Of this there can be no question, but it does not appear from the record that a board of health was organized, or any effort of anyone in behalf of the city of Pocatello or the county of Bannock excepting that Frank M. Watson, who was chairman of the board of county commissioners, told respondent to look after smallpox patients, and the county would pay him for his services. The record does not disclose any authority in Mr. Watson to make this or any contract on behalf of the county. The law provides a clerk for the board of county commissioners, whose duty requires him to keep a record of all proceedings of the board. This is a public record, and all parties dealing with the county are charged with notice of this record. Respondent could have informed himself of the authority Mr. Watson had to make this contract, either as chairman of the board of county commissioners or as a member of the board of health (if there had been one), by an examination of the record, and it was his duty to do so before he accepted the employment. If he accepted such employment from Mr. Watson, it was voluntarily on his part, and he cannot recover for such services.

The judgment of the trial court is reversed, with costs to appellant.

Quarles, C. J., and Sullivan, J., concur.