ROLETTE STATE BANK, a Corporation, Respondent, v. ROLETTE COUNTY, a Body Corporate, Appellant.

(218 N. W. 637.)

Counties — to bind county there must be formal action by board of county commissioners.

1. A board of county commissioners is an entity, and in order to bind a county there must be formal action on the part of the Commissioners as a board.

Counties — individual county commissioners may not bind county unless expressly authorized so to do.

2. An individual member of a board of county commissioners is not empowered to act alone; and a county is bound by his act only where the law expressly authorizes him to so act, or where he has been duly authorized by the board of county commissioners and then only in a matter wherein the board is empowered to confer such authority.

Counties — highways — a member of the county board is not authorized to enter into a contract on behalf of county for construction or repair of roads.

3. Section 1946b of the 1925 Supplement to the 1913 Compiled Laws of

Note.—(2, 3) As to nature and scope of authority of county boards, see 7 R. C. L. 939; 3 R. C. L. Supp. 477.

North Dakota does not authorize a member of the board of county commissioners to enter into a contract on behalf of the county for the construction or repair of roads; it merely empowers the board of county commissioners to appoint one or more members of the board to act as overseers or supervisors in laying out, constructing or repairing roads and bridges, or in constructing or repairing other property of the county, and further authorizes the board to compensate the members so appointed for the services performed as such overseers or supervisors.

**Work and labor — unless party sought to be charged has voluntarily accepted benefit there is no quasi contractual obligation to pay for services.**

4. The mere fact that a person renders services beneficial to another is not sufficient to impose a quasi contractual obligation upon the latter to compensate the person who performs such services. Ordinarily there is no quasi contractual obligation to pay for services unless the party sought to be charged has voluntarily accepted the benefit thereof and if the services are of such nature that the latter has no choice but to accept them there is no acceptance and no liability.

**Counties — not liable for unauthorized contract.**

5. In the instant case it is *held* that the defendant county is not liable in quasi contract for services performed in repairing roads.

Opinion filed March 21, 1928.

Counties, 15 C. J. § 107 p. 460 n. 2, 3, 7; § 108 p. 460 n. 10; § 256 p. 560 n. 82. Highways, 29 C. J. § 347 p. 605 n. 72. Work and Labor, 40 Cyc. p. 2807 n. 2; p. 2808 n. 7.

From a judgment of the District Court of Rolette County, *Buttz*, J., defendant appeals.

Reversed.

*John C. Adamson* and *Wm. Bateson,* for appellant.

"The doctrine of the election of remedies is regarded as being an application of the law of estoppel. . . . If a party should invoke a remedy appropriate to a certain state of facts, and there should exist another remedy appropriate to a different state of facts, inconsistent with and repugnant to the first state of facts, his invocation of the first remedy is an election which by the bare commencement of the action will bar his right to invoke the other remedy." McMahan v. McMahan, 26 L.R.A. 1299, 115 S. E. 293.

"In order that the commencement of an action which is not prosecuted to judgment, and which results in no benefit to the plaintiff or detriment to the defendant, shall have the effect to bar any other remedy the plaintiff may have, the remedies must proceed from opposite and irreconcilable claims of right and must be so opposite or inconsistent that a party cannot logically assume to follow one without renouncing the other." Marcus v. National Council, K. L. S. 127 Minn. 196, 149 N. W. 197.

"Election of remedies, in its generic sense, is the act of choosing between the different modes of procedure and relief allowed by the law on the same state of facts which modes may be termed 'coexisting remedies.'" 7 Enc. Pl. & Pr. 361.

"Since a claim for services against a county can only be founded on a statute or a contract entered into with the proper officers, acting within the scope of his authority, the mere beneficial character of services performed is insufficient to support a claim against the county for compensation." County Comrs. v. Bline (Ind.) 72 N. E. 1034.

Where a statute creates a power to contract and prescribes the modes of contracting, the statute must be strictly followed or the contract will not bind the county. Murphy v. Napa County, 20 Cal. 497; Turnpike Co. v. Bartholomew County, 72 Ind. 126.

*Kehoe & Verret* and *John A. Stormon,* for respondent.

"An election can exist only where there is a choice between two or more inconsistent remedies actually existing at the time the election is made." 20 C. J. 21.

"The right to make an election must actually exist; and if it shall appear that it did not, then it is quite immaterial, in its bearing upon a subsequent action, that some previous action, looking to a remedy for the plaintiff's loss, had been brought." Henry v. Harrington (N. Y.) 86 N. E. 29.

"A judgment for the defendant in an action on account stated, on the ground that no account had been stated, is not a bar to a subsequent action on the open account." 1 C. J. 730; Menser v. Green, 47 Misc. 374, 94 N. Y. Supp. 15. "Persons who have in any way advanced money to a corporation, which money has been devoted to the necessaries of the corporation, are considered in chancery (and also, it would seem to follow, in an equitable action for money had and received) as creditors

of the corporation to the extent the loan has been expended." Green's Brice, Ultra Vires, 823.

CHRISTIANSON, J. During the whole of the year 1922 Al Martin was county commissioner from the third commissioner district of the defendant county. In the summer of 1922 he entered into an arrangement with his two sons Elza and Theo., whereby they agreed to do some work on the roads within the said county commissioner's district. They performed such work and prepared bills or claims therefor against the defendant county. The bills were all prepared and filed in the office of the county auditor during the month of December 1922 and aggregated the sum of $3,615. The bills were all O. K.'d by Al Martin. Some time after they had been filed, the claims were assigned to the plaintiff bank by written assignment. No action was taken on the bills by the board of county commissioners, but they remained on file with the county auditor and were presented to the board of county commissioners at the various meetings of the board. On October 9, 1925, the board of county commissioners of the defendant county adopted a resolution rejecting the bills.

This action was brought to recover the amount of such bills; and it is alleged in the complaint that such amount is the reasonable value of the services performed by Elza and Theo. Martin. At the conclusion of the trial both parties moved for a directed verdict. Thereupon the jury was discharged, and the trial court made findings and conclusions in favor of the plaintiff. Judgment was entered accordingly and defendant has appealed.

In plaintiff's brief on this appeal it is said that the case was tried and argued in the trial court on the theory that there was involved among others the following question: Did the county commissioner, Martin, have the power and authority to enter into a contract for the performance of the services in question so as to render the county liable therefor on quantum meruit? In our opinion the question thus stated is determinative of the action and renders it unnecessary to consider any of the other questions discussed.

Each organized county in this state is a body corporate for civil and political purposes and as such may sue and be sued, contract and be contracted with. Comp. Laws 1913, § 3250. Under the system of county

government in force during the entire history of the state the fiscal af-
fairs of the county are transacted by a board of county commissioners,
consisting of three or five county commissioners. N. D. Const. § 172;
Comp. Laws 1913, §§ 3257, 3260. Such board has power to institute
and prosecute civil actions in the name and on behalf of the county and
to make all orders respecting county property (Comp. Laws 1913, §
3273); to construct and repair bridges and to open and lay out high-
ways (Comp. Laws 1913, § 3275). The board is required to "meet
and hold sessions for the transaction of business at the court houses in
their respective counties, or at the usual places of holding court, on the
first Mondays in January, April, July and October of each year;"
special sessions may be called "when the interests of the county demand
it, upon giving five days' notice of the time and object of such meeting
by posting up notices in three public places in the county or by publica-
tion in one newspaper in the county." Comp. Laws 1913, § 3266. The
board is required to "hold its sessions with open doors and transact all
business in the most public manner;" and to hear "all matters per-
taining to the affairs of the county . . . in session only." Comp.
Laws 1913, § 3290. The board is required to keep a record of all pro-
ceedings had before it (Comp. Laws 1913, § 3271); certified copies of
such proceedings are admissible as evidence in the courts of this state
(Comp. Laws 1913, § 3269) and it is made the duty of the board to
cause to be published in the official newspaper a "full and complete
report of all of its official proceedings at each regular and special meet-
ing." Comp. Laws 1913, § 3308. The board is required to keep an
account of the receipts and expenditures of the county and on the first
Monday of July, annually, it must cause a full and accurate statement
of the assessments, receipts and expenditures of the preceding year to
be made out in detail under separate heads with an account of all debts
payable to and by the county treasurer and cause the same to be pub-
lished in at least one newspaper in the county. Comp. Laws 1913, §
3276. The board must audit all claims against the county (Comp.
Laws 1913, § 3276; State ex rel. Wiles v. Heinrich, 11 N. D. 31, 88 N.
W. 734); and warrants upon the county treasurer, except warrants for
salaries of county officers, can be issued only "upon the order of the
board of county commissioners," signed by the chairman thereof, and

attested by the signature of the county auditor. Comp. Laws 1913, § 3289.

Section 3268, Comp. Laws 1913, provides:

"When the board is equally divided on any question it shall defer a decision until the next meeting at which time the question shall be decided by a majority of the board."

The board of county commissioners is authorized to levy taxes for bridge and road purposes. Comp. Laws 1913, §§ 2150, 1945.

It is the duty of the board of county commissioners at the annual meeting in January of each year, or as soon thereafter as practicable, "to apportion the county into one or more road districts when such county is not formed into townships; " and to appoint a road supervisor for each of such districts. Comp. Laws 1913, § 1959. "The board of county commissioners must order the expenditure of all road taxes paid into the county treasury, in the improvement of the highways, paying the road supervisors, purchasing implements and repairing bridges in each road district, under such regulations as it may deem most expedient for the public interests, and for this purpose shall order the payment of such sum by the treasurer to the persons performing such labor upon the certificate of the road supervisor; provided, that such funds shall be expended in the road district in which the person resides, when it is a personal tax or a tax on personal property, and where the real estate is situate when it is a tax on real estate." Comp. Laws 1913, § 1971.

These statutory provisions clearly evidence an intention on the part of the legislature that the board of county commissioners shall act collectively and as a board and that consequently the county is not bound by any action taken by the county commissioners as individuals. "They act as a board and through action taken at proper meetings." State ex rel. Kopriva v. Larson, 48 N. D. 1144, 1153, 189 N. W. 631. "In order to bind the county, there must be formal action on the part of the commissioners as a board." Rolette State Bank v. Rolette County, 55 N. D. 377, 213 N. W. 848. This is also the rule established as regards boards of county commissioners in other states by the great weight of judicial authority. 15 C. J. p. 460; Conger v. Latah County, 5 Idaho, 347, 48 Pac. 1064; Cleveland County v. Seawell, 3 Okla. 281, 41 Pac. 592; Gardner v. Dakota County, 21 Minn. 33; Bentley v. Chicago County, 25 Minn. 259; Miller v. Smith, 7 Idaho, 204, 61 Pac.

84; Castle v. Bannock County, 8 Idaho, 124, 67 Pac. 35; Williams v. Broadwater County, 28 Mont. 360, 72 Pac. 755. In Williams v. Broadwater County, supra, the supreme court of Montana said:

"This board, having supervision over the official conduct of all county officers, and generally over all county business, is one of considerable dignity and power; and the statutes contemplate that its meetings shall be held and conducted in an orderly and businesslike way. To bind the county by its contracts, it must act as an entity, and within the scope of its authority. Its members may not discharge its important governmental functions by casual sittings on drygoods boxes, or by accidental meetings on the public streets; and its chairman, unless lawfully authorized by the board to do some act, or acts, has no more power than has any other member of the board. The statutes do not vest the power of the county in three commissioners acting individually, but in them as a single board; and the board can act only when legally convened. Paola & F. River R. Co. v. Anderson County, 16 Kan. 302; 7 Am. & Eng. Enc. Law, 2d ed. 979. And its minutes should be kept in such manner as to give true and correct information to all inquiring concerning county affairs."

This language is directly applicable as regards boards of county commissioners in this state.

In this case there is no evidence that Al Martin was authorized by the board of county commissioners to employ anyone to perform the labor for which recovery is sought, or that Martin was designated by the board to oversee or supervise the repairing of the road upon which the labor in question was performed. Nor is there any evidence that the board of county commissioners or any commissioner other than Martin had any knowledge that the work was being performed.

The county auditor, however, testified that in 1922 there was a custom in Rolette county that each county commissioner had the supervision of the roads in his own district and "brought in the bills for them;" and that such bills were paid on presentation when there were funds with which to pay them. The county auditor further testified that one reason the bills in suit were not paid at the January 1923 meeting of the board of commissioners was that he refused to write the warrants because the bills were in excess of the taxes levied for road purposes. Under these undisputed facts it is clear that the board of county com-

56 N. Dak.—37.

missioners of the defendant county at no time entered into any contract or arrangement with Elza or Theo. Martin; and that such board in no manner ratified any arrangement made by Al Martin. The arrangement under which Elza and Theo. Martin performed labor was one wholly between them and their father Al Martin, one of the county commissioners. But the plaintiff contends that Al Martin was empowered to contract for the construction or repair of roads within his commissioner district by § 1946b of the 1925 Supplement which reads:

"Whenever the board of county commissioners of any county is required by law to lay out, oversee and supervise the building or repairing of roads, bridges, or the building or repairing of any property owned by the county, the board may appoint or designate one or more members of the board to personally lay out, oversee or supervise the building or repairing of any such roads, bridges, or property of the county. Each commissioner shall receive as compensation for his services the sum of five dollars per day and ten cents per mile for every mile necessarily traveled while engaged in the performance of duties herein mentioned."

In our opinion this statute does not confer the power claimed. As we construe it, the statute merely authorizes the board of county commissioners to designate one or more of the members of such board to act as overseers or supervisors in the laying out, construction or repair of any road or bridge or in the construction or repair of any other property of the county. The statute nowhere implies that a county commissioner has power to contract for the construction or repair of roads, bridges or other property of the county. It recognizes that even in designating an overseer the board of county commissioners must act as a board. In the absence of specific statutory authorization so to do it was very doubtful whether a board of county commissioners would have had authority to make an arrangement with one or more of the members of the board to act as an overseer or supervisor of county work and to compensate him for services rendered as such supervisor. See Miller v. Smith, 7 Idaho, 204, 61 Pac. 824.

If § 1946b is susceptible of the interpretation contended for by the plaintiff then one county commissioner may enter into a contract for the construction or repair not only of a road or a bridge but of any other county property and incur large obligations in behalf of the county without the knowledge of the other members of the board of county

commissioners and without any mention of such action in the minutes of the proceedings of the board. Publication of the proceedings of the board would give no information to the taxpayers of the county of the actual financial status of the county and instead of one board being in charge of and responsible for the fiscal affairs of the county there would be as many fiscal agencies as there are county commissioners. Instead of orderly conduct of business such as the statute contemplates (Williams v. Broadwater County, 28 Mont. 360, 72 Pac. 756) there would be confusion. Even though the legislature had power to confer upon an individual member of the board of county commissioners authority to bind the county by contract without the knowledge of the other members of the board it should not be lightly assumed that the legislature has abrogated the traditional policy, in force during the entire history of the state and throughout the country generally, of requiring the board of county commissioners to act as a board.

The conclusion thus reached as regards the meaning of section 1946b, supra, is decisive of this action and precludes any recovery on the part of the plaintiff. 2 Dill. Mun. Corp. 5th ed. pp. 1186, 1187; Henderson v. Long Creek School Dist. 41 N. D. 640, 171 N. W. 825. In this case there was no contract expressed in words nor was there a contract implied in fact. There was no meeting of the minds of the contracting parties. Neither was there, in our opinion, any quasi contract, or contract implied in law, obligating the county to pay for the labor performed. The courts have no more right to create an obligation by means of the doctrine of quasi contractual liability than they have to create an express contract between the parties. In either case the right and extent of recovery is measured by the obligations of the parties. In the case of contract, expressed in words or implied in fact, the obligations are such as the parties have fixed by their agreement. In such case, their respective duties are measured by the terms of their contract. In the case of quasi contract the rights and obligations of the parties arise from facts and circumstances independent of agreement or assent. In such case the obligations are imposed by law, without reference to the intention of the parties, for the purpose of bringing about justice and the rights and correlative duties of the parties depend upon the acts and conduct of the respective parties as regards the matter in controversy. But in both cases,—in quasi contract as well as in contract,—the right

to recover is predicated upon a correlative obligation on the part of the other party to pay. If there is no obligation there can be no recovery.

The mere fact that services beneficial to the county were rendered is not sufficient to impose a quasi contractual obligation upon the county to compensate the person who performed such services. Bosard v. Grand Forks, 13 N. D. 587, 102 N. W. 164; 3 Page, Contr. § 1516; New Jersey Car Spring & Rubber Co. v. Jersey City, 64 N. J. L. 544, 46 Atl. 649; Boston Electric Light Co. v. Cambridge, 163 Mass. 64, 39 N. E. 787; Jeffersonville v. Louisville & J. Steam Ferry Co. 27 Ind. 100, 89 Am. Dec. 495; Wilson v. Mitchel, 17 S. D. 515, 65 L.R.A. 158, 106 Am. St. Rep. 784, 97 N. W. 741; 3 McQuillin, Mun. Corp. p. 2748; 2 Dill. Mun. Corp. 5th ed. pp. 1186, 1187; note in 27 L.R.A. (N.S.) p. 1125. Such obligation arises only when the services have been performed in such circumstances, and where there has been such contract on the part of those whose actions may bind the county, as to impose upon it the legal obligation to compensate therefor. 2 Dill. Mun. Corp. 5th ed. pp. 1186, 1187; Bosard v. Grand Forks, 13 N. D. 587, 102 N. W. 164.

Ordinarily, there is no quasi contractual obligation to pay for services, unless the party sought to be charged has accepted the services. And if the services are of such nature that he has no choice but to accept them, there is no acceptance and no liability. 3 Page, Contr. § 1516. See also 2 Dill. Mun. Corp. pp. 1186, 1187; Bosard v. Grand Forks, supra.

So far as the evidence in this case shows, the officials authorized to act for and bind the county, as regards services to be performed in the construction and repair of roads, had no knowledge of the alleged arrangement between Al Martin and his two sons and had no knowledge that the labor was being performed or had been performed until the bills for the services were presented to the county for payment. The officers charged with the duty of contracting for and accepting such service on behalf of the county were not free to accept or reject the benefit of the service. They had no choice in the matter at all. There was no acceptance by the county.

It may be a hardship to the plaintiff in this case to deny a recovery but the rights of the parties must be measured by the laws as they are. The courts are charged with the duty of interpreting and applying the

law as it is and have no power to amend it. Henderson v. Long Creek School Dist. supra. We are aware of no legal principle which will justify a recovery in this case. To sustain liability in this case would be tantamount to holding that a county is always liable for the reasonable value of the services of anyone who constructs or repairs highways at the request of a single member of the board of county commissioners. It would give to one county commissioner a power and to his action an effect that is expressly withheld by the law.

The judgment appealed from must be and it is reversed and the action dismissed. It is so ordered.

NUESSLE, Ch. J., and BIRDZELL, BURR, and BURKE, JJ., concur.