**Merlyn WEBER et al., Plaintiffs,**

**v.**

**TOWNER COUNTY, a Public Corporation and Gerrard Township, Defendants.**

**Civ. No. A2–75–48.**

United States District Court,
D. North Dakota,
Northeastern Division.

Nov. 18, 1976.

John Hjellum, Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, N. D., for plaintiffs; Ralph E. Koenig, Minneapolis, Minn., of counsel.

Edward C. Gillig, Thomas L. Zimney, Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, N. D., for Towner County.

James R. Britton, Ackre & Britton, Cando, N. D., for Gerrard Township.

## ORDER

BENSON, Chief Judge.

This personal injury action arose out of an automobile accident which occurred on a gravel road in Gerrard Township, Towner County, near Cando, North Dakota. The action was commenced June 18, 1975, with Plaintiffs demanding a jury trial. Jurisdiction is based on diversity of citizenship, Plaintiffs being residents of Montana, and an amount in controversy in excess of $10,000.00. The original complaint named as defendant only Towner County, but was amended pursuant to stipulation January 5, 1976, to include as an additional party defendant Gerrard Township.

The accident complained of resulted when the International Harvester school bus in which Plaintiffs were riding, which had been converted into a mobile home, ran into a washed out portion of a Gerrard Township road around 3:15 A.M. on June 8, 1974. Plaintiffs allege that the condition of the road resulted from the negligence of the Defendants in the inspection and maintenance of the road, and that Defendants were also negligent in failing to properly warn traffic of the unreasonably dangerous condition of the road.

Shortly after the washout occurred in mid-April, 1974, it was discovered by Gerrard Township supervisors, one of whom apparently got in touch with a county road crew employee to have him place a sign on one side of the washout. A second warning sign, more stationary in nature, was placed on the other side of the washout by one of the township supervisors. Within a few days, Township Supervisor Thomas M. Solberg contacted Roy Peterson, who at that time was in charge of the county road crew located at Bisbee, North Dakota, and was also a member of the Towner County Board of Commissioners. Inquiry was made of

Peterson as to repair of the washout, and some sort of arrangement was made between Peterson and the township supervisor. Thereafter and prior to the accident in question, members of the Gerrard Township Board of Supervisors and Peterson checked the washout on various occasions to determine whether it had dried up sufficiently to allow a repair crew to move machinery into the area to make the required repairs. The washout was finally repaired, apparently by a county road crew, sometime subsequent to the accident in question.

Defendant Towner County filed a motion for summary judgment under Rule 56, F.R. Civ.P., on the ground that no genuine issue as to any material fact exists and that it, Towner County, is entitled to judgment dismissing the action against it. In its motion, Towner County alleges that as a matter of law Gerrard Township had responsibility for repair of the washout and the placement of signs adequate to warn the traveling public of the dangerous condition of the township road, and that on the facts no concurrent obligation existed on the part of Towner County to repair the washout or place warning signs.

Based on the record before this Court, it is clear that the road on which the accident occurred is a Gerrard Township road. As such, under North Dakota statute, primary responsibility for maintenance of the road lies with the Gerrard Township Board of Supervisors. NDCC § 24–06–01 provides:

"The board of township supervisors of any township in the state shall have *general supervision* over the roads, highways, and bridges throughout the township." (Emphasis added)

As part of this "general supervision", the board of township supervisors in any township is given the "power and duty" to "appoint the township overseer of highways," (NDCC §§ 58–06–01(11), 58–12–01) who shall:

"1. Have *direct charge* of the construction and maintenance of all township highways and bridges, whether the work is done by contract or day labor;

2. Be responsible for the maintenance of the township highways throughout the entire year; . . . ." NDCC § 58–12–03. (Emphasis added)

In the case at bar, Gerrard Township apparently did not have an appointed overseer of highways during the period of time involved in this dispute. Defendant Towner County thus contends that the Gerrard Township Supervisors were "in essence" maintaining direct control over the repair of the washout in question, and were therefore responsible for placement of adequate warning devices on both sides of the washout, much the same as an overseer of highways would have direct control over, and responsibility for, placement of warning signs. However, for purposes of this motion for summary judgment it is unnecessary to determine the extent of control exercised by the Gerrard Township Board of Supervisors over the road and washout in question. It is sufficient to note here that, as a matter of law, Towner County was under no statutory obligation to repair or maintain the road in question. In the absence of a duty imposed through some other means, such as a contractual arrangement, Towner County had no responsibility to repair the washout or place adequate warning signs.

Counties and townships in North Dakota have been given specific authority to enter into contracts for the construction, improvement or repair of township roads and bridges. NDCC § 24–06–09 provides:

"The board of supervisors of any township may enter into a contract with the board of county commissioners of the county, the board of supervisors of another township, or the directors of a soil conservation district for the construction, improvement, or repairing of township roads and bridges without the necessity of advertising for bids."

In addition, as part of such a contract a township could require the county to post warning signs to warn the traveling public of any hazardous conditions involved in the construction, improvement or repair work. The North Dakota Legislature has specifi-

cally set forth the warning sign requirements which should be included in any contract for work to be performed on township roads:

"*Warning signs of road construction.* —Whenever the department or any county or township shall enter into a contract for the construction and improvement of any road or culvert, or bridge thereon, it, as a condition of such contract, shall provide therein that the contractor shall place suitable warning signs which can be read for a distance of one hundred feet in daytime, and also shall erect and place at night a red or white lantern or a torch or other effective device, of a type approved by the department, at both ends of such construction work, no less than three hundred feet therefrom, warning the public that such road is under construction or improvement and either is closed, or hazardous for travel thereon, and when a highway is so marked, the traveler shall proceed only with great care and diligence, but nothing contained in this section shall make any township, county or the state liable for the failure of any contractor to erect such warning signs." NDCC § 24–03–09.[1]

In the case at bar, there is no question that a contract could have been entered into by the Gerrard Township Board of Supervisors on the one hand, and the Towner County Board of Commissioners on the other, for repair of the washout in question, and that under such a contract Towner County could have been required to place warning signs as described in NDCC § 24–03–09.

Under the motion for summary judgment at issue herein, the threshold question is whether or not a contract existed between Towner County and Gerrard Township, prior to the accident, for repair of the washout

in question. If a contract did exist, then questions might arise as to Towner County's obligation to post warning signs. If no contract for repairs existed at the time the accident occurred, inquiry into any possible obligation to post warning signs on the part of Towner County would be foreclosed.

 In North Dakota, the power to contractually bind a county is vested in its board of county commissioners. *Rolette State Bank v. Rolette County*, 56 N.D. 571, 218 N.W. 637, 639 (1928). In entering into contracts, the board of county commissioners must act as a unit.

"The Board of County Commissioners must act collectively at a duly called and held meeting. The county is not bound by any action taken by a commissioner or commissioners acting individually." *Hart v. Bye*, 86 N.W.2d 635, 638 (N.D.1957). (citations omitted)

In support of its motion for summary judgment, Towner County has submitted copies, the accuracy of which is attested in a supporting affidavit, of the minutes of all the meetings of the Board of County Commissioners of Towner County from January 15, 1973 (approximately sixteen months prior to the accident) to January 7, 1975 (approximately seven months subsequent to the date of the accident). Nowhere in the minutes does there appear any reference whatever to the washout in question, or to a contract with Gerrard Township for its repair.

While the absence of any official action on the part of the Towner County Board of Commissioners is apparently not disputed by the resisting parties herein, several other factors are pointed out which, it is alleged, demonstrate the existence of a contract between Towner County and Gerrard Town-

---

1. The same requirements as to warning signs must be met when a township elects to do the construction or repair work itself. NDCC § 24–03–10 provides:

 "*Public officers.*—Whenever a township, county, or the department shall construct, improve, or repair any road, culvert, or bridge, or shall gravel any road, and such work shall render travel on such road, cul-

 vert, or bridge unsafe or dangerous, the board of supervisors of any such township, the board of county commissioners of any such county, or the commissioner or any foreman or other person in charge of such work, shall place such warning signs as provided in section 24–03–09."

 *See Anderson v. Stokkeland*, 125 N.W.2d 665 (N.D.1964).

ship for repair of the washout. These factors are briefly as follows:

(1) Plaintiffs, resisting parties herein, assert that Commissioner Peterson had authority to accept work on the part of the county when requested by any of the townships within the county.

(2) A warning sign was placed on one side of the washout by a county employee the night the washout was first discovered, at the request of a Gerrard Township supervisor.

(3) Some sort of oral arrangement was entered into between Peterson and Township Supervisor Solberg concerning repair of the washout soon after it was discovered and prior to the accident.

(4) In their Brief in Opposition, Plaintiffs refer to a "longstanding custom and practice" of the county doing all the road repair and maintenance work for Gerrard Township upon oral agreement.

(5) Several attempts at repair were made by a county road crew (over which Peterson had control, apparently as foreman); the repair was eventually made by a county crew subsequent to the accident.

(6) Prior to the repair, Peterson, as well as members of the Gerrard Township Board of Supervisors, checked the condition of the washout and the warning signs.

(7) Gerrard Township was "billed" for the work done by the county road crew, and tendered payment of $1,400.

The resisting parties herein contend that the above all indicate the existence of a contract to repair, or at the very least raise a factual issue as to the existence of such a contract.

The North Dakota Supreme Court in *Rolette State Bank v. Rolette County, supra*, dealt with a situation similar in many respects to the case at bar. In *Rolette State Bank*, a single county commissioner had entered into an arrangement with his two sons whereby they agreed to do road work on roads "within said county commissioner's district." The work was done, and bills were presented to the board of county commissioners for payment. When payment was refused, the sons assigned their claim to the plaintiff and suit was instituted against the county for the reasonable value of the services rendered. In reversing a judgment for the plaintiff rendered by the trial court, the North Dakota Supreme Court discussed plaintiff's contention that the single commissioner alleged to have entered into the contract had authority to bind the county:

"[It is the intention] of the Legislature that the board of county commissioners shall act collectively and as a board, and that consequently the county is not bound by any action taken by the county commissioners as individuals. 'They act as a board, and through action taken at proper meetings.' . . . 'In order to bind the county, there must be formal action on the part of the commissioners as a board.'" 218 N.W. at 639. (Citations omitted)

*See also Hart v. Bye, supra* at 638.

The Court went on to discuss a "custom" apparently followed in Rolette County at the time under which individual commissioners authorized road work in their particular districts and then "brought in the bills" for payment:

"The county auditor, however, testified that in 1922 there was a custom in Rolette county that each county commissioner had the supervision of the roads in his own district and 'brought in the bills for them,' and that such bills were paid on presentation when there were funds with which to pay them. The county auditor further testified that one reason the bills in suit were not paid at the January, 1923, meeting of the board of commissioners was that he refused to write the warrants because the bills were in excess of the taxes levied for road purposes. Under these undisputed facts, it is clear that the board of county commissioners of the defendant county at no time entered into any contract or ar-

**76**

rangement with [the two sons of the single commissioner], and that such board in no manner ratified any arrangement made by [the single commissioner]. The arrangement under which [the two sons] performed labor was one wholly between them and their father, . . . one of the county commissioners." 218 N.W. at 639.

In the present action, the only indication of authority on the part of Commissioner Peterson to accept township road work on behalf of Towner County consists of statements in two affidavits in which Peterson himself attests having this authority. There is no evidence in the record that the Towner County Board of Commissioners, acting as a board, delegated this authority to Peterson. Further, and perhaps more fundamental, the resisting parties cite no authority under which a board of county commissioners could validly delegate the power to contract for township road work to a single commissioner in the first place. In conducting the affairs of the county, a board of county commissioners has only that authority prescribed by statute. *Ulrich v. Amerada Petroleum Corp.*, 66 N.W.2d 397 (N.D.1954). In view of the failure to show any action taken by the Towner County Board of Commissioners granting Peterson authority to accept work on township roads, and the lack of statutory authority for such delegation, bare assertions contained in the two affidavits above mentioned are insufficient as a matter of law to create a factual issue as to Peterson's authority. His individual actions were in no way binding on Towner County.

The action of the Towner County employee in placing a warning sign on one side of the washout the night the washout was discovered, at the request of a Gerrard Township supervisor, was likewise insufficient to create any binding obligation on the part of Towner County. *See Trinity Hospital Association v. City of Minot*, 76 N.W.2d 916 (N.D.1956).

The remaining factors set out above which are alleged to indicate the existence of a contract between Gerrard Township and Towner County for repair of the washout all pertain to activities undertaken by parties other than the Towner County Board of Commissioners, the only entity that could contractually bind Towner County. Even tender of a bill for the work performed for Gerrard Township and acceptance of $1,400 in payment thereof, which under this motion will be assumed to have occurred, were authorized by a party other than the Towner County Board of Commissioners.

Viewing the facts as set forth in the record in a light most favorable to the resisting parties under this summary judgment motion, it is clear that the Board of County Commissioners of Defendant Towner County at no time entered into any contract or arrangement with Gerrard Township for repair of the washout, and that such board in no manner ratified any arrangement made by Commissioner Peterson or any other person alleged to have acted on behalf of Towner County.

There is one additional matter, not raised directly in this motion for summary judgment, which should be here determined. Under NDCC § 9–06–01, a contract is said to be either express or implied. An express contract is "one the terms of which are stated in words," and an implied contract is "one the existence and terms of which are manifested by conduct." NDCC § 9–06–01. In resisting the summary judgment motion herein, Plaintiffs do not specify whether the alleged contract between Towner County and Gerrard Township was express or implied. However, based on the record before this Court, neither an express nor an implied contract can be said to have existed for repair of the washout. The lack of any affirmative action whatsoever on the part of the Towner County Board of Commissioners negates any notion of express contract, and no conduct on the part of the Board of County Commissioners has been alleged which would indicate the existence of an implied contract, prior to the accident.

On the claims of Plaintiffs against Defendant Towner County, the Court finds

there is no genuine issue as to any material fact, and on the facts, Defendant Towner County is entitled to summary judgment dismissing the action against it.

IT IS ORDERED that summary judgment be entered dismissing · the action against Defendant Towner County.