**GRAND FORKS COUNTY, a Municipal Corporation, Plaintiff,**

v.

**CITY OF GRAND FORKS, a Municipal Corporation, Defendant.**

No. 8074.

Supreme Court of North Dakota.

Aug. 7, 1963.

James L. Hansen, Asst. State's Atty., Grand Forks, for plaintiff.

J. Gordon Caldis, Grand Forks, for defendant.

STRUTZ, Judge.

This proceeding comes to us on certified questions from the district court of Grand Forks County, the Honorable Philip R.

Bangs presiding. The certification was made under Chapter 32-24 of the North Dakota Century Code.

The County brought suit against the City for care and maintenance of city prisoners in the county jail, demanding payment for a period of six years prior to the serving and filing of the complaint. The answer of the City admits that the City has committed its prisoners to the county jail from its city magistrate's court, but contends that the City did not expressly or impliedly agree to pay for such care. Defendant further contends that the plaintiff is without power to collect for such care and maintenance of city prisoners and is estopped from making a claim for such care and maintenance, and that any attempt to collect for such care and maintenance is illegal and void by reason of the statute of limitations.

The facts were stipulated in writing by the parties, and disclose the following:

That, for six years immediately preceding the commencement of this action, the defendant City has confined prisoners sentenced in the city police magistrate's court in the county jail, and that the City never has paid anything for the care and maintenance of such prisoners; that there was no written agreement between the parties as to such care and maintenance; and that the County now has demanded payment for such care and maintenance, which payment has not been made by the City.

This matter comes to this court on the following certified questions:

"1. Is a city liable to a county for expense of maintaining prisoners committed to the county jail by the city magistrate for violations of local ordinances; such liability based on an implied contract, there being no express statute requiring reimbursement by the city?

"A. Has defendant city impliedly agreed to pay for the prisoner care and maintenance demanded in the plaintiff's complaint?

"B. Is such an implied contract as referred to in question A above ultra vires?

"2. If the answer to number 1 above is yes, is the county precluded from recovering prisoner costs for the six (6) prior years on the basis of estoppel or estoppel by laches?"

The district court certified that these questions were determined and answered by the court as follows:

"1.  Yes.

"1A.  Yes.

"1B.  No.

"2.  No."

The first question propounded is whether a city is liable to a county for expense of maintaining prisoners committed to the county jail by the police magistrate of the city for violating city ordinances. In determining the answer to this question, we first must determine what is included in the term "expense of maintaining" such prisoners.

Section 40-05-01 of the North Dakota Century Code lists the powers of a municipality. Subsection 41 of that section gives to the municipality the authority:

"To establish, maintain, and regulate a jail and, with the consent of the board of county commissioners, to use the county jail for the confinement of persons charged with or convicted of the violation of any ordinance."

The City has the right, under this statute, to use the county jail for the confinement of its prisoners, with the consent of the county commissioners. The record fails to disclose that consent ever was requested of the county commissioners by the city authorities for use of the county jail for confinement of city prisoners, or that the

county commissioners ever refused to accept such prisoners. It is stipulated, however, that the City did confine in the county jail prisoners convicted of violations of city ordinances. Where the County, for years, accepted such prisoners, use of the county jail for city prisoners will be deemed consented to by the county commissioners. It is undisputed that the County has paid for the maintenance of such city prisoners while they were confined in its jail, and that the City has not paid for any part of such care and maintenance.

It is conceded by both parties that no contract or agreement ever was entered into between the County and the City for the care and maintenance of city prisoners in the county jail. If the County is to recover for such care and maintenance, it must be on the basis of an implied agreement.

█ The rule is well settled in most jurisdictions that a municipality or other political subdivision may become obligated on an implied contract to pay the reasonable value of benefits which it receives, accepts, and appropriates, where the municipality has the power to contract for such benefits. 38 Am.Jur., "Municipal Corporations," Sec. 515, p. 193; 84 A.L.R., p. 937.

█ The doctrine of implied municipal liability has been held to apply to all cases where such benefits are received under circumstances where the general law, independent of express contracts or agreements, would imply an obligation on the part of the municipality to do justice and to pay for the benefits received. Decisions holding a municipality liable on implied contract for benefits received are based on the theory that a municipal corporation ought not to receive benefits which it can legally acquire by contract, but for which it has not contracted, and then avoid liability for the reasonable value of the benefits received on the plea that no contract had, in fact, been consummated. Where the municipal-

ity has the authority to contract for such benefits, it ought not to escape liability for the reasonable value thereof on the plea of ultra vires, on the theory that, even though the municipality had the power to contract for such benefits, it is not bound to pay for them because the consent of the municipality has not been given in the manner it ought to have been given, i. e., by specific contract or agreement.

█ This court adopted this general rule in the case of Northwestern Sheet & Iron Works v. Sioux County, 76 N.D. 451, 36 N.W.2d 605. In that case, we held that a municipal corporation may not escape liability for the reasonable value of goods obtained by it through transactions within its general powers merely because the methods by which the goods were obtained were procedurally defective.

The City cites the decision of this court in the case of Trinity Hospital Association v. City of Minot (N.D.), 76 N.W.2d 916, in support of its contention that a public corporation may not be held liable on implied contract. In that case, the hospital attempted to collect from the City of Minot for hospital and medical services rendered for a person who had been fatally wounded in attempting to escape from the scene of a burglary. One of the City's policemen had shot the escaping burglar and then had ordered the wounded man to be taken to the plaintiff's hospital for treatment. This court held that a police officer of the City had no authority to enter into a contract and create a liability against the City, either express or implied, for medical services under such circumstances. Thus, since the police officer had no authority to contract for the City for such services, there was no liability on an implied contract since the City received no benefits of any kind and the services for which the plaintiff hospital was attempting to recover were rendered to a stranger—not for the benefit of the City. The plaintiff was not compelled to accept the wounded person but, having done so, without previous arrangement for payment of its

services, it would have to look to the estate of the burglar for payment.

■ The case at bar can easily be distinguished from the Trinity Hospital case. In the case before us, the City had the authority to contract for maintenance of its prisoners and, where it accepts such benefits, there is an implied contract that it will pay for them. The implied agreement is not ultra vires and beyond the power of the City to enter into. An agreement is ultra vires only in those cases where the municipality has no power under existing law to make the agreement in the first place. Williams v. City of Fargo, 63 N.D. 183, 247 N.W. 46. In the case before us, however, the City did have the authority to make an agreement with the County for the care and maintenance of its prisoners. Where a municipality has the power to contract but there is a defect in the manner of exercising that power, the municipality is liable for benefits received and retained. City of Shidler v. H. C. Speer & Sons Co., 62 F.2d 544 (10th Cir.); Western Chemical Co. v. Board of Commissioners of Lancaster County, 130 Neb. 550, 264 N.W. 699.

In other words, where a municipality has the power to enter into an obligation and is not prohibited from creating a liability in any but a specified way, it may be held liable on an implied agreement, upon the principle of unjust enrichment for services rendered and for goods furnished. Shulse v. City of Mayville, 223 Wis. 624, 271 N.W. 643.

In this connection, we should like to point to several statutes enacted by the Legislature which may have a bearing in determining legislative intent on the question of whether the County should have the right to recover from the City for the maintenance of city prisoners kept in the county jail. One such statute provides that all fines collected for offenses against the ordinances of a city shall be paid into the city treasury at such time and in such manner as is prescribed by city ordinance. Sec. 40-11-13, N.D.C.C.

Under Section 40-11-12 of the North Dakota Century Code, any person against whom a fine is imposed who fails to pay such fine may be committed to:

"* * * the county jail, city prison, workhouse, village jail, house of correction, or other place provided by the municipality for the incarceration of offenders until the fine, penalty, and costs shall be fully paid in money or discharged by labor as is provided in section 40-18-12."

Section 40-18-12, referred to in the above statute, provides that any person guilty of violating a city ordinance may be required to work during his confinement in jail,

"* * * for the municipality at such labor as his strength will permit, not exceeding ten hours in each working day, * * *"

Thus we see that the Legislature provided that fines imposed for violation of a city ordinance, as well as work performed by a prisoner during his confinement, all inure to the benefit of the City. Surely the Legislature would not have intended that the expense of maintaining a city prisoner during his confinement in the county jail should be paid by the County, but that all of the benefits which might be derived from the imprisonment of offenders should inure to the benefit of the City.

■ The City asserts that the County may not exact payment for the keeping of city prisoners in the county jail, and points to Section 12-44-01 of the North Dakota Century Code which requires the establishment of a jail in every county, "at the expense of the county," for the safekeeping of prisoners lawfully committed to it. The contention of the City is that this statute is an expression of legislative intent that all prisoners, including city prisoners, are to be kept at the expense of the County. The County, on the other hand, contends that this section merely provides for the

establishment of a jail at the County's expense, and that this section would not apply to the feeding or maintenance of prisoners, once the jail has been established. A careful reading of the statute leads us to the conclusion that it is applicable only to the erection of the county jail. This court has held that the meaning of the word "establish" depends on how it is used and the subject to which it is applied; that, for example, when applied to a road, the word "establish" means "the laying out or building" of the road. State v. Rosenquist, 78 N.D. 671, 51 N.W.2d 767, at 783.

We believe the requirement in the statute here under consideration that a jail shall be established in every county, "at the expense of the county," means that a jail shall be provided or constructed in every county at county expense. Establishment of a jail in every county has no reference to caring for the prisoners who, once the jail is established, might be confined therein.

The City cites the California case of City of Pasadena v. Los Angeles County, 118 Cal.App.2d 497, 258 P.2d 28, in support of its position. In that case, certain county prisoners charged with felonies were confined in the city jail pending arraignment. The City brought suit against the County for the expense of maintaining such prisoners in the city jail. The California court held that the City could not recover because the County maintained a jail for the confinement of its own prisoners and that California law did not provide for the commitment of county prisoners to city jails. In our case, the North Dakota law specifically provides that city prisoners may be committed to county jails. In the absence of such specific statutory authority, however, the California court held that the City could not recover for maintaining the county prisoners in the city jail since the City had no authority to accept such prisoners. The California court further found that there was no request ever made by the County that its prisoners be confined in the city jail. In view of the facts and circumstances in the California case, the court held that there was no implied agreement on the part of the County to pay for such maintenance.

The California case clearly is not analogous to the situation before us. North Dakota law provides that city prisoners may be incarcerated in county jails. The City of Grand Forks, although it was authorized to maintain a city jail by State law, obviously has not done so but has availed itself of the provision of our law which permits city prisoners to be committed to county jails. While there was no express agreement between the governing body of the city and the governing body of the county touching upon the care and maintenance of city prisoners in the county jail, the statute authorized such an agreement. Under such circumstances, an implied contract arose from the request of the City that its prisoners be confined in the county jail.

The final question certified to this court is whether, if our answer to the first question is in the affirmative, the County is precluded, on the basis of an estoppel, from recovering from the City for costs of maintenance of city prisoners.

■ Ordinarily, any action upon a contract, obligation, or liability, express or implied, may be commenced within six years after the cause of action has accrued. Sec. 28-01-16, Subsec. 1, N.D.C.C.

■ Estoppel may be urged against a party when such party, by his own declaration, act, or omission, intentionally and deliberately leads another to believe a particular thing to be true and thus causes such other party to act upon such belief. Sec. 31-11-06, N.D.C.C. Thus estoppel is based upon some misleading conduct or language of one party which, being relied on, operates to the prejudice of the other party, and estoppel is applied as against the party guilty of such misleading conduct or language in denying some right which otherwise might exist. Surely it cannot

be argued in this case that the City was in any way misled by the conduct of the County in accepting the city prisoners. The failure of the County to bill the City for maintenance of its prisoners for a long period of time did not in any way prejudice the City. We do not believe the County is estopped from asserting its claim.

For reasons stated in this opinion, we believe the answers of the district court to the questions certified to this court were correct. Questions 1 and 1A are answered in the affirmative and Questions 1B and 2 are answered in the negative.

A public question being involved, no costs are allowed.

MORRIS, C. J., and TEIGEN, BURKE and ERICKSTAD, JJ., concur.