Albert G. SCHOONOVER and Glen G. Schoonover, d/b/a Schoonover Brothers, Plaintiffs and Appellees,

v.

MORTON COUNTY, North Dakota, a political subdivision of the State of North Dakota and Edmund T. Bauer, County Auditor of Morton County, Defendants and Appellants,

and

Clarence West, John Dahl, Mike Schaaf and Charles Engelter, Individually and as County Commissioners of Morton County, and Jake Kautzman, Individually and as a former member of the Board of County Commissioners of Morton County, Defendants and Appellees.

Civ. No. 9459.

Supreme Court of North Dakota.

July 7, 1978.

Rausch & Rausch, Bismarck, for plaintiffs and appellees; argued by Richard Rausch, Bismarck.

Richard L. Schnell, State's Atty., Mandan, and Fleck, Mather, Strutz & Mayer, Bismarck, for defendants and appellants; argued by Richard L. Schnell, State's Atty.

Zuger & Bucklin, Bismarck, and Wheeler, Wolf, Wefald & Peterson, Bismarck, for defendants and appellees; argued by Leonard H. Bucklin, Bismarck.

ERICKSTAD, Chief Justice.

This is an appeal by Morton County (hereinafter County) and the County Auditor of Morton County, Edmund T. Bauer, defendants and appellants, from two summary judgments issued by the Morton County District Court. The first summary

judgment was in favor of Albert Schoonover and Glen Schoonover, d/b/a Schoonover Brothers (hereinafter Schoonovers), plaintiffs and appellees, and against the County. This summary judgment dated November 15, 1977, ordered the County to pay Schoonovers $44,397.10 for work Schoonovers had done for the County, and dismissed the County's counterclaim against Schoonovers. The second summary judgment dated December 19, 1977, dismissed the County's and Bauer's cross-claim against the individuals who were the County Commissioners of Morton County in 1976.

In January of 1976 the County gave notice that it would receive bids for crushing and hauling gravel. The Schoonovers filed a written bid for hauling and crushing gravel and their bid was accepted by the County Commissioners at a public meeting. Following the acceptance of the bid, Schoonovers did perform gravel hauling and crushing for the County. Schoonovers submitted bills for their work and all but one of these were paid. The County Auditor, Bauer, in October of 1976, however, refused to pay Schoonovers' bill for $54,-397.10 which Schoonovers claimed the County owed them for their work.

In a complaint dated March 31, 1977, Schoonovers sued the County, Bauer, and the individuals who were the County Commissioners in 1976. The complaint sought judgment against the defendants in the amount of $54,397.10 plus interest and costs under the alternative theories of express and implied contract. Thereafter, Morton County, through Bauer, filed an answer denying liability, a counterclaim seeking recovery of all County funds paid to Schoonovers since September 15, 1971, for unauthorized work, and a cross-claim against the individual commissioners for the amount of County funds paid to Schoonovers since September 15, 1971, for unauthorized work. The individual commissioners filed an answer which basically alleged that the County was liable to Schoonover and that they were not liable as individuals. The commissioners also filed a cross-claim against Bauer seeking contribution or indemnity if they should be held liable.

On November 4, 1977, a hearing was held on a summary judgment motion made by Schoonovers. Summary judgment was granted by the district court in favor of Schoonovers and against Morton County for $44,397.10 plus interest and costs.[1] The summary judgment also dismissed the action by Schoonovers against the individual defendants and dismissed the County's counterclaim against Schoonovers.

On November 15, 1977, another hearing was held on a summary judgment motion made by the individual commissioners. Summary judgment was granted by the district court dismissing the County and Bauer's cross-claim against the individual commissioners and the individual commissioners cross-claim against Bauer.

The County contends that the two summary judgments were improperly granted for the reason that there were genuine issues of material fact to be determined. We will discuss the two summary judgments separately in order to determine whether or not there are genuine issues of material fact which would require a trial.

The law in regard to summary judgments in North Dakota is well established. A motion for summary judgment will be granted only if, after taking a view of the evidence in a light most favorable to the party against whom summary judgment is demanded, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), N.D.R.Civ.P., *Farmers Elevator Co. v. David,* 234 N.W.2d 26, 29 (N.D.1975), *Perdue v. Knudson,* 179 N.W.2d 416, 420 (N.D.1970).

We have also said that summary judgment is available to allow for prompt disposition of a controversy on the merits without a trial where there is no dispute as to the salient facts, or when only a question of

1. The amount granted by the district court was $10,000 less than asked for in the complaint. This difference was the result of the County paying Schoonovers $10,000 after the commencement of this action.

law is involved and its purpose is to promote the expeditious disposition of cases. *Zuraff v. Empire Fire & Marine Ins. Co.,* 252 N.W.2d 302, 307 (N.D.1977), *Rude v. Letnes,* 154 N.W.2d 380, 381 (N.D.1967).

■ Finally, when a motion for summary judgment is made and supported as provided in the rule for summary judgment, the adverse party may not rest upon mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial. Otherwise, if appropriate, summary judgment should be entered against him. Rule 56(e), N.D.R.Civ.P., *Johnson v. Community Development Corp. of Wahpeton,* 222 N.W.2d 847, 850 (N.D.1974), *Ray v. Northern Sugar Corp.,* 184 N.W.2d 715, 718 (N.D.1971).

The first summary judgment in effect held that the County was liable to Schoonovers for the services they performed for the County from September 15, 1971, through October 5, 1976. The County basically denied that it was liable to Schoonovers for the work for three reasons.

The first reason advanced by the County for denying its liability was that in its answer it did not acknowledge that the services of Schoonovers were performed or that the amount alleged due by the Schoonovers was reasonable. However, at the time of the first summary judgment hearing, there was nothing in the record, outside of the answer, denying that Schoonovers performed the gravel hauling and crushing that formed the basis of Schoonovers' bills to the County. Neither was there anything before the court to the effect that the amount alleged to be due for the work was unreasonable. On the contrary, all of the evidence in the depositions and affidavits before the court, including the deposition of Bauer, was that there was no doubt that Schoonovers performed the work for the benefit of the County, that the amount alleged due was reasonable, and that Schoonovers had acted in good faith. Thus there was no genuine issue of material fact in regard to whether or not Schoonovers did the work, whether or not the work benefit-

ted the County, and whether or not the amount alleged to be due was reasonable.

The second reason which the County raised to deny its liability to the claim of Schoonovers was that there were certain procedural defects in the agreement between Schoonovers and the County Commissioners. The County asserted that certain statutory requirements, such as the keeping of minutes and the making of contracts by resolutions and in writing, were not followed by the County Commissioners. As a result of these procedural defects, the County asserts that there was no collective action on the part of the County Commissioners which is necessary to legally bind the County to a contract.

The County admits that the commissioners as a group accepted the bid of Schoonovers for gravel hauling and crushing. However, the County correctly points out that the bid merely established a dollar figure per yard of gravel and did not deal with specific quantities or specific projects. This accepted bid, by itself, is not sufficient to form an enforceable contract. *See Mag Construction Co. v. McLean County,* 181 N.W.2d 718 (N.D.1970).

The County also admits that, except for the last invoice submitted by Schoonovers to the County, the County Commissioners did collectively authorize payment of County funds to Schoonovers for the work they had done for the County. The problem, as far as the County views it, is that the commissioners did not collectively authorize Schoonovers to do the particular work projects they performed. The County alleges that the individual commissioners entered into oral contracts with Schoonovers and that therefore there was no collective action on the part of the County Commissioners.

The individual County Commissioners in their answer deny that the board did not act collectively when entering into a contract with Schoonovers. Mike Schaaf, one of the County Commissioners, in his deposition, emphasized the fact that Schoonovers appeared at commission meetings at least three times after their bid was accepted. This is not disputed by any other person.

Schaaf, in his deposition, asserted that at these meetings the board as a group authorized the particular projects Schoonovers were to perform. He also asserted that the inadequacy of the minutes to accurately reflect these discussions and agreements with Schoonovers was the fault of Bauer who, as county auditor, was responsible for keeping the minutes.

█ There thus is a dispute over what exactly occurred at the commission meetings at which Schoonovers were present, and whether or not the necessary statutory formalities were followed in entering agreements with Schoonovers. We find that, because of the case law in this state, a determination of the above factual disputes is not necessary to properly resolve the issues contained in the complaint and counterclaims involved in this case. These factual disputes are therefore not genuine issues of *material* fact.

The law in North Dakota which resolves the issues involved in the complaint and counterclaim is set out in *Northwestern Sheet & Iron Works v. Sioux County,* 76 N.D. 451, 36 N.W.2d 605 (1949). That case involved the liability of the county for certain culverts supplied to the county by a contractor. The board of commissioners did not follow the proper bidding procedures as set out in the statutes and on that basis the county asserted that it was not bound to pay for the culverts, even though they were being used by the county. This court reviewed a number of prior decisions dealing with the liability of the county under like circumstances and then said:

"A public corporation may not escape liability for the reasonable value of goods obtained and retained by it through transactions coming within the general powers of the corporation and the contracting corporate board, which are procedurally defective without paying the reasonable value thereof when equity and good conscience require payment." 36 N.W.2d at 610.

This court, applying that principle, then concluded:

"that the Board of County Commissioners made a substantial and good faith attempt to comply with the statute requiring advertisement for bids, that the purchase of materials was within the general powers of the board, and that these materials were received by the county and used in furtherance of a lawful purpose. It is not claimed that the goods were not worth the amount the board agreed to pay therefor. Equity and good conscience require that the county pay the reasonable value of the goods that it received. The plaintiff is, therefore, entitled to recover the unpaid balance of that amount with interest as prayed for in the complaint." 36 N.W.2d at 611.

*See also Brusegaard v. Schroeder,* 201 N.W.2d 899 (N.D.1972), and *Grand Forks County v. City of Grand Forks,* 123 N.W.2d 42 (N.D.1963).

The County contends that the rule as set out in *Northwestern Sheet & Iron Works v. Sioux County, supra,* is not applicable in this case where it is alleged that the commissioners did not act collectively in authorizing the specific contracts with Schoonovers. It contends that the rule only applies when there has been collective board action. In support of that contention, the County relies on *Rolette State Bank v. Rolette County,* 56 N.D. 571, 218 N.W. 637 (1928). In that case, one commissioner entered into an arrangement with his two sons whereby they agreed to do some work on the roads within Rolette County. The sons did the road work and submitted bills to the county for payment. These bills were assigned by the sons to a bank, and the bank presented them to the county commissioners for payment at various meetings. The commissioners took no action on them until, finally, the board of county commissioners adopted a resolution rejecting the bills. A suit was then brought to recover the amount of the bills. This court noted that the other commissioners had no knowledge of the alleged arrangement until the bills were presented to them for approval. This court in that case denied recovery, even on a quasi contractual basis, saying:

"We are aware of no legal principle which will justify a recovery in this case. To sustain liability in this case would be tantamount to holding that a county is

always liable for the reasonable value of the services of any one who constructs or repairs highways at the request of a single member of the board of county commissioners. It would give to one county commissioner a power, and to his action an effect, that is expressly withheld by the law." 56 N.D. at 581, 218 N.W. at 641.

We do not believe that the holding in *Rolette State Bank v. Rolette County, supra,* requires us to hold that the County in this case is not liable to Schoonovers for the work they have done for the County since 1971. First, the cases are factually distinguishable. In *Rolette State Bank,* one commissioner acted entirely on his own in entering a contract with his own sons and the other commissioners rejected the bills. In this case, the commissioners as a group accepted Schoonovers' bid, collectively authorized payment of all previous bills of Schoonovers, and believe that the County is liable for the last bill submitted by Schoonovers. Second, the rule in North Dakota of holding a county liable on an implied contractual basis where there are procedural defects was adopted after the decision in *Rolette State Bank.*

■ We therefore do not interpret the rule set out in *Northwestern Sheet & Iron Works v. Sioux County, supra,* as narrowly as the County. We believe the proper rule to be that a county cannot escape liability for the reasonable value of services and goods obtained and retained by it through transactions coming within the general powers of the county and the county commissioners merely because of procedural defects in the methods by which the goods and services were furnished to the county. To escape liability under those circumstances, it is necessary for a county to show fraud, bad faith, collusion, or some other factor which would make it inequitable or unjust to require the county to pay for the reasonable value of the services or goods.

■ In this case there is no allegation of fraud, bad faith, collusion, or any other factor which would make it inequitable or unjust to require the County to pay for the reasonable value of the services and goods

obtained and retained by it. Instead, it is undisputed that Schoonovers were acting in good faith in their transactions with the County. To deny them the reasonable value of the services they performed merely because the commissioners, who fully intended to contract with them, did not follow the proper procedures, would be inequitable and result in unjust enrichment to the County.

The third reason the County raised to deny its liability to Schoonovers was that the County did not have funds available to pay for such work and services and that therefore the expenditure would constitute an extraordinary outlay under Section 11–11–18, N.D.C.C. The relevant part of that section reads:

"The board of county commissioners shall submit to the electors of the county at any regular or special election any proposal for an extraordinary outlay of money by the county when the proposed expenditure is greater in amount than can be provided for by the annual tax levies. . . . ." § 11–11–18, N.D.C.C.

■ The mere fact that an expenditure will be greater than an amount provided for by county tax levies for one year does not make it an extraordinary outlay.

In dealing with this matter in the first summary judgment, the district court said:

"Morton County and the County Auditor of Morton County submitted no specific facts showing that the amount to be paid was an expenditure or in excess of amounts that can be provided by revenues of the county or in violation of statutes requiring a vote of the people."

■ We agree with the district court that there was no evidence presented in the depositions and affidavits at the time of the first summary judgment hearing showing that the amount to be paid Schoonovers would be an expenditure in excess of amounts that could be provided by the revenues of the County. The fact that the balance of the specific fund from which the payment was to be made may have been temporarily below the amount of the bill does not require a vote of the electors of the County to approve the payment of that

bill. We therefore also reject the County's third reason for denying the County's liability to Schoonovers.

We conclude that there were no genuine issues of material fact before the district court in the first summary judgment hearing and that the district court properly concluded that the County was liable to Schoonovers for the work they performed for the County.

■ The second summary judgment dismissed Bauer and the County's cross-claim against the individual commissioners. The County asserts that if the commissioners violated certain statutes, they should be required to reimburse the County for the funds the County paid to Schoonovers for unauthorized work. The County, however, cites no authority to support its contention. We have found no authority nor any sound policy reason which would require the County Commissioners to reimburse the County for the reasonable value of goods and services obtained and retained by the County under the circumstances of this case where there is no allegation of fraud, bad faith, collusion, or personal gain by the commissioners.

The district court found, and we agree, that there was no genuine issue of material fact involved in the counterclaim by Bauer and Morton County, and that the commissioners were entitled to a judgment as a matter of law dismissing the cross-claim.

■ Bauer and the County, in this appeal, also contend that the two summary judgments were improperly granted for the reason that the County was still in the process of taking depositions in the case. However, the County did not avail itself of the procedure set out in Rule 56(f), N.D.R. Civ.P. That provision reads:

"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

The County did not submit any affidavits to the court stating the need for further discovery, nor did the County, at any time, ask for a continuance so that it could present to the court further affidavits or depositions in support of its opposition to the motion for summary judgment. We therefore find no merit in the County's contention that the summary judgments were improperly granted because they were still in the process of taking depositions in the case.

By this opinion, we do not intend to condone any alleged misconduct of the county commissioners in acting singly as opposed to acting collectively as a board, but the remedy is not as sought in the cross-claim.

The two summary judgments appealed from in this case are therefore affirmed.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.