SYKESTON TOWNSHIP, Bilodeau Township, Johnson Township and Hawks Nest Township, Plaintiffs and Appellees,

v.

WELLS COUNTY, Defendant and Appellant.

Civ. No. 10655.

Supreme Court of North Dakota.

Oct. 23, 1984.

Thomas J. Aljets, Carrington, for plaintiffs and appellees; argued by Thomas J. Aljets, Carrington.

Vincent A. LaQua, States Atty., Fessenden, and Kelsch, Kelsch, Bennett, Ruff & Austin, Mandan, for defendant and appellant; argued by Timothy J. Austin, Mandan.

ERICKSTAD, Chief Justice.

The defendant, Wells County, appeals from a judgment entered by the district court in favor of the plaintiffs, the Sykeston, Bilodeau, Johnson, and Hawks Nest Townships, in the amount of $24,352.25, plus costs and disbursements, for expenditures which the townships incurred in graveling a road designated and selected by Wells County as part of the county road system. We affirm.

By statute, boards of county commissioners have "the sole authority and responsibility to acquire land for, construct, maintain and operate the county road system as designated and selected by them." § 24–05–17, N.D.C.C. The district court determined that the townships had justifiably relied, in incurring the expense of graveling the road, upon an innocent misrepresentation of law made by the county to the effect that the townships were responsible for maintaining the road until such time as the road was blacktopped. The court concluded that the county had been unjustly enriched at the expense of the townships.

The county contends that it is not liable, under a theory of unjust enrichment, for township expenditures on the county road because its board of county commissioners, by collective action, did not authorize or approve the expenditures. Before we may reach the issue raised by the county, we must first consider a procedural matter raised by the townships; that is, whether or not this appeal must be dismissed because the record on appeal does not include a transcript of the evidentiary hearing held in the district court.

Rule 10(b), N.D.R.App.P., reads in pertinent part as follows:

"If an appeal is taken in a case in which any evidentiary hearing was held, it is the duty of the appellant to order a transcript of the proceedings.... *The order must be served on the reporter and must be for a complete transcript of the proceedings, unless a stipulation is obtained from all affected parties specifying portions which are not required for the purposes of the appeal.* If a party affected by the appeal unreasonably refuses to stipulate to exclude from the transcript portions of the record not necessary to the resolution of issues raised by the appellant, the party proposing the stipulation may apply to the trial court for an order requiring the refusing party to pay for the unnecessary portions of the transcript and reasonable attorney's fees for making the application." [Emphasis added.]

The county did not order a complete transcript of the trial proceedings as required by Rule 10(b), nor does the record indicate that the county proposed to stipulate to exclude from the record a transcript of the proceedings.

We have said that the securement of an adequate basis for allowing meaningful and intelligent appellate review underlies the procedural requirements of Rule 10, N.D.R.App.P. *Bye v. Elvick*, 336 N.W.2d 106, 109 (N.D.1983). *See also Sanford v. Sanden*, 333 N.W.2d 429, 431 (N.D.1983); *City of Wahpeton v. Skoog*, 295 N.W.2d 313, 316 (N.D.1980). In *Bye v. Elvick*, *supra*, we allowed the appellant, who was unable to afford a complete transcript of the trial proceedings, to proceed upon a partial transcript. In so doing, however, we noted "that unless the record on appeal allows for a meaningful and intelligent review of the alleged error, we will decline review of the issue."

The townships contend in their brief that the county's appeal can proceed without the transcript; however, if this Court should deem it necessary to determine whether or not a finding or conclusion of the district court is supported by the evidence, the county will have failed in its burden of proof of showing error. The county concedes that it accepts, verbatim, the district court's findings of fact, and argues that a transcript is not required

when an appellant urges reversal of a judgment solely on the basis of the court's alleged erroneous application of the law to uncontested findings. The townships have set forth the district court's findings of fact in that part of their brief containing the statement of facts, noting that the court's findings of fact are undisputed and the only facts available to this Court. Under these circumstances we will allow the county to proceed without a transcript with our review being limited to a determination of whether or not the district court, based upon its undisputed findings of fact, erred as a matter of law in allowing recovery by the townships under a theory of unjust enrichment.

Pertinent district court findings of fact follow:

## "FINDINGS OF FACT

"1.

"Sykeston and Johnson Townships, of Wells County, on the West, and Bilodeau and Hawks Nest Townships, on the East, are intersected by nine miles of gravel road from Highway #200 South to the Wells/Stutsman County line. Three miles of the gravel road divide Sykeston and Bilodeau Townships and six miles of the gravel road divide Johnson and Hawks Nest Townships.

"2.

"The gravel road was designated and selected by Wells County as part of the county road system in 1964. At all times since 1964 Wells County has had the responsibility to maintain, operate and repair the said road.

"3.

"It was the custom and belief of the Wells County Board of County Commissioners that the road would not become a county road until such time as it was blacktopped and until the road was blacktopped, it remained the responsibility of the townships. This belief was erroneous and constituted a mistake of law.

"4.

Beginning in the summer of 1973, the gravel road was rebuilt in anticipation of blacktopping. The decision to rebuild the road was that of the Wells County Board of County Commissioners and the rebuilding was done by Wells County.

"5.

"There was no contract or agreement on the part of any of the plaintiff townships to assume any of the costs of the building or maintenance of the gravel road.

"6.

"Wells County billed the cost of the rebuilding of the road to the plaintiff townships as follows:

| TOWNSHIP | CLAIM VOUCHER DATE | AMOUNT |
| --- | --- | --- |
| Johnson | February 23, 1976 | $13,652.13 |
| Hawks Nest | February 23, 1976 | 13,652.13 |
| Sykeston | March 8, 1974 | 6,132.26 |
| Bilodeau | March 8, 1974 | 6,132.26 |

"7.

"Wells County's billing to the plaintiff townships constituted an innocent misrepresentation of law that the townships were responsible to maintain the roads.

"8.

"The plaintiff townships acted upon and accepted the bills for payment because they believed that the road was a township road and that the townships were responsible to maintain the road. This belief arose from the plaintiff townships' justifiable reliance upon Wells County's innocent misrepresentation of law. This belief was erroneous and constituted a mistake of law.

"9.

"The road was not surfaced in the rebuilding process and was dangerous to travel and impassable when wet. The road badly needed gravel.

"10.

"In the spring of 1976, representatives from Johnson Township and Hawks Nest Township traveled to Fessenden and met with the Wells County Board of County Commissioners at the Courthouse to request financial help from Wells County in connection with making the road passable by applying gravel. Such meeting was not

a part of the Commissioner's agenda but an advance call was made to arrange the meeting.

"At the meeting, the chairman of the Board of County Commissioners, acting on an honest belief, based on the custom in Wells County that the road did not enter the county system until it was blacktopped, told the township representatives that the road was the townships' responsibility and suggested (as a temporary stop-gap measure) that five hundred yards (500 yds.) of gravel per mile be put on the road and that the road might be blacktopped the following spring. None of the commissioners disagreed with these statements; however, there was no resolution before the Board and the Board took no official action regarding the townships' request on the road.

"11.

"In 1976, Johnson Township graveled the North half of the South six miles of the road and Hawks Nest Township graveled the South half of the South six miles of the road.

"12.

"Johnson Township spot-graveled the North half of the South six miles of the road in 1977.

"13.

"In 1979, the four plaintiff townships regraveled the North six miles of the road.

"14.

"Between 1976 and 1979, Johnson Township spent Nine Thousand Nine Hundred Sixty-three and 62/100 Dollars ($9,963.62) graveling the road; Hawks Nest spent Nine Thousand Six Hundred One and 67/100 Dollars ($9,601.67) graveling the road; Bilodeau Township spent Two Thousand Three Hundred Ninety-three and 48/100 Dollars ($2,393.48) graveling the road and Sykeston Township spent Two Thousand Three Hundred Ninety-three and 48/100 Dollars ($2,393.48) graveling the road. . . .

"15.

"In 1980, the chairman of the Wells County Board of County Commissioners, believing the South three miles (3 mi.) of the road was in such condition that some action should be taken, talked to representatives of the townships about graveling the road.

"16.

"Subsequent to the chairman's visit to the townships in 1980, the county and the townships learned for the first time that the road was a county road and the responsibility of the county to maintain, operate and repair. The county promptly graveled the South three miles (3 mi.) of the road upon learning that it was its responsibility to gravel the road.

"17.

"All of the graveling done by the townships was necessary. The county would have had to do the graveling if the townships hadn't done it.

"18.

"The graveling done by the townships was done as a result of a mutual mistake of law as to whether the county or the townships were responsible to maintain the road. The townships' mistaken belief arose from their justifiable reliance upon Wells County's innocent misrepresentation of law.

"19.

"The road has never been blacktopped."

The district court concluded (1) that the county was responsible at all times material to the lawsuit to maintain, operate, and repair the county road intersecting the townships, (2) that the parties' erroneous belief that it was the townships' responsibility to maintain, operate, and repair the road was a mistake of law, and (3) that the townships' erroneous belief was the result of justifiable reliance upon the county's innocent misrepresentation of the law. The court also concluded that the following elements essential to a recovery by the townships under the theory of unjust enrichment, as set forth by this Court in *A & A Metal Buildings v. I–S, Inc.,* 274 N.W.2d 183, 189 (N.D.1978), were present:

1. An enrichment;
2. An impoverishment;

3. A connection between the enrichment and impoverishment;

4. Absence of a justification for the enrichment and impoverishment; and

5. An absence of a remedy provided by law.

*See also Schneider v. Striefel,* 302 N.W.2d 405, 408 (N.D.1981).

The doctrine of unjust enrichment generally rests upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching himself at the expense of another. *Cavalier County Memorial Hospital Association v. Kartes,* 343 N.W.2d 781, 784 (N.D.1984); *Jerry Harmon Motors, Inc. v. Heth,* 316 N.W.2d 324, 328 (N.D.1982). The doctrine serves as a basis for requiring restitution of benefits conferred in the absence of an express or implied in fact contract. *Cavalier Cty. Memorial Hosp. Ass'n, supra; Beck v. Lind,* 235 N.W.2d 239, 250 (N.D.1975). Unjust enrichment includes not only the conferral of a positive benefit, but also the prevention of expense or loss. *Midland Diesel Service & Engine Company v. Sivertson,* 307 N.W.2d 555, 557 (N.D.1981). Fraud or other misconduct on the part of the person alleged to have been unjustly enriched need not be shown. *Midland Diesel Service & Engine Company, supra.*

In its brief and during oral argument the county asserted, with no citation to authority, that "the unjust enrichment relationship is predicated upon an inferred intent between the parties to pay for the services." On this basis the county argues that the theory of unjust enrichment does not apply to this situation because it was the belief of the townships and the county that the townships had to pay for the road repairs. The intent of the parties at the time the townships rendered their services, however, is not dispositive. As was said by this Court in *Gate City Savings and Loan Association v. International Business Machines Corporation,* 213 N.W.2d 888, 893–94 (N.D.1973):

" '[T]he substance of an action for "unjust enrichment" lies in a promise, implied by law, that one will restore to the person entitled thereto that which in equity and good conscience belongs to him. Quasi-contractual obligations may be imposed despite, and frequently in frustration of, the intention of the parties, and no promise of repayment need be shown. . . .

\*　　\*　　\*　　\*　　\*　　\*

" 'A quasi-contract has no reference to the intentions or expressions of the parties. The obligation is imposed despite, and frequently in frustration of, their intention. . . . In quasi-contracts the obligation arises, not from consent of the parties as in the case of contracts express or implied in fact, but from the law of natural immutable justice and equity.' " [quoting 17 C.J.S. *Contracts,* § 6, and 66 Am.Jur.2d, *Restitution and Implied Contracts,* § 2] *See, e.g., Lundstrom Construction Company v. Dygert,* 254 Minn. 224, 94 N.W.2d 527, 533 (1959); *Hurdis Realty, Inc. v. Town of North Providence,* 121 R.I. 275, 397 A.2d 896, 897 (1979).

The county argues that this case is similar to the case of *Rolette State Bank v. Rolette County,* 56 N.D. 571, 218 N.W. 637 (1928), in that there was no collective action on the part of its board of commissioners necessary to legally bind the county. The county argues that during the period from 1976 to 1979, its board of commissioners did not request, as a body and by resolution, that the townships gravel the road, nor did it authorize or approve payment of the graveling done by the townships. It argues that the board's chairman merely suggested, at the meeting held in the spring of 1976, that the townships apply gravel to the road at their own expense.

In *Rolette State Bank, supra,* a county commissioner hired his two sons to do some work on roads within his district without the knowledge of the other commissioners. At a subsequent meeting of the board of county commissioners the county adopted a resolution rejecting bills submitted by the sons to the county for work performed on the roads at a cost in excess of taxes levied

for road purposes. This Court concluded that it could find no contractual or quasi contractual basis for allowing recovery by the sons against the county:

> "We are aware of no legal principle which will justify a recovery in this case. To sustain liability in this case would be tantamount to holding that a county is always liable for the reasonable value of the services of any one who constructs or repairs highways at the request of a single member of the board of county commissioners. It would give to one county commissioner a power, and to his action an effect, that is expressly withheld by the law." 218 N.W. at 641.

The holding in *Rolette State Bank, supra,* was distinguished by this Court in *Schoonover v. Morton County,* 267 N.W.2d 819, 823–24 (N.D.1978). In *Schoonover,* the Morton County Board of Commissioners accepted a written bid filed by the Schoonovers for the hauling and crushing of gravel. The Schoonovers submitted bills to the county for such work; however, the County Auditor refused to pay one of the bills which the Schoonovers claimed the county owed them for their work. A suit was then brought by the Schoonovers to recover the amount of the unpaid bill under alternative theories of express and implied contract. In its answer, Morton County denied liability, filed a counterclaim seeking recovery of all county funds paid to the Schoonovers for unauthorized work and also filed a cross-claim against the individual commissioners for such funds. On appeal from summary judgments issued in favor of the Schoonovers and the individual commissioners, the county asserted that certain statutory requirements, the keeping of minutes and the making of contracts by resolutions and in writing, were not adhered to by the board of commissioners. On this basis the county asserted that there had been no collective action on the part of the board necessary to legally bind the county to a contract.

We reviewed in *Schoonover, supra,* the case of *Northwestern Sheet & Iron Works v. Sioux County,* 76 N.D. 451, 36 N.W.2d 605 (1949), particularly the following principle articulated therein:

> "A public corporation may not escape liability for the reasonable value of goods obtained and retained by it through transactions coming within the general powers of the corporation and the contracting corporate board, which are procedurally defective without paying the reasonable value thereof when equity and good conscience require payment." 36 N.W.2d at 610.

*See also Brusegaard v. Schroeder,* 201 N.W.2d 899 (N.D.1972); *Merchants National Bank and Trust Company of Fargo v. City of Grand Forks,* 130 N.W.2d 212 (N.D.1964); *Grand Forks County v. City of Grand Forks,* 123 N.W.2d 42 (N.D.1963).

In applying the principle of *Northwestern Sheet & Iron Works* to the facts in *Schoonover,* we distinguished the holding in *Rolette State Bank:*

> "We do not believe that the holding in *Rolette State Bank v. Rolette County, supra,* requires us to hold that the County in this case is not liable to Schoonovers for the work they have done for the County since 1971. First, the cases are factually distinguishable. In *Rolette State Bank,* one commissioner acted entirely on his own in entering a contract with his own sons and the other commissioners rejected the bills. In this case, the commissioners as a group accepted Schoonovers' bid, collectively authorized payment of all previous bills of Schoonovers, and believe that the County is liable for the last bill submitted by Schoonovers. Second, the rule in North Dakota of holding a county liable on an implied contractual basis where there are procedural defects was adopted after the decision in *Rolette State Bank.*
>
> "We therefore do not interpret the rule set out in *Northwestern Sheet & Iron Works v. Sioux County, supra,* as narrowly as the County. *We believe the proper rule to be that a county cannot escape liability for the reasonable value of services and goods obtained and re-*

*tained by it through transactions coming within the general powers of the county and the county commissioners merely because of procedural defects in the methods by which the goods and services were furnished to the county. To escape liability under those circumstances, it is necessary for the county to show fraud, bad faith, collusion, or some other factor which would make it inequitable or unjust to require the county to pay for the reasonable value of the services or goods."* 267 N.W.2d at 824. [Emphasis added.]

In applying the above principle to the facts in *Schoonover,* we concluded:

"In this case there is no allegation of fraud, bad faith, collusion, or any other factor which would make it inequitable or unjust to require the County to pay for the reasonable value of the services and goods obtained and retained by it. Instead, it is undisputed that Schoonovers were acting in good faith in their transactions with the County. To deny them the reasonable value of the services they performed merely because the commissioners, who fully intended to contract with them, did not follow the proper procedures, would be inequitable and result in unjust enrichment to the County." *Id.*

*Northwestern Sheet & Iron Works, supra,* involved the liability of a county for culverts sold to it by a contractor. The Court considered the effect of the failure by the board of county commissioners to advertise for bids as required by statute. Relying on prior decisions dealing with the liability of the county under like circumstances, this Court concluded that equity and good conscience required that the county pay the reasonable value of the goods that it received. 36 N.W.2d at 611. It was noted that the board of commissioners had made a substantial and good faith attempt to comply with the statute requiring advertising for bids, that the purchase of materials was within the general powers of the board, and that the materials were received by the county and used in furtherance of a lawful purpose. *Id.*

The county asserts that this case can be distinguished from *Schoonover* and *Northwestern Sheet & Iron Works,* because those cases involved procedurally defective contracts with the respective boards of county commissioners acting as a group. It argues that in this case there was no contract, the board did not act as a group, and at most, the board's chairman merely suggested that the townships gravel the road. We agree that this case does not involve a procedurally defective express contract between the parties as was the case in *Schoonover and Northwestern Sheet & Iron Works;* however, this fact alone does not bar recovery under the principle enunciated in *Northwestern Sheet & Iron Works. See Grand Forks County v. City of Grand Forks, supra.* The county's argument concerning the applicability of *Rolette State Bank, supra,* to this case fails to consider that the district court predicated the townships' recovery upon an innocent misrepresentation of law made by the county, a fact not present in *Rolette State Bank.* This is not a case where a township, without the knowledge and approval of the board of county commissioners, performed maintenance work upon a county road and thereafter billed the county for the work which was done.

■ The parties agree that the district court relied, in part, upon the Restatement of Restitution, § 55 (1937), in reaching its decision. Section 55 of the Restatement reads in pertinent part as follows:

"§ 55. BENEFIT OBTAINED BY FRAUD OR MISREPRESENTATION.

"A person who has conferred a benefit upon another induced thereto by a mistake of law, is entitled to restitution thereof if his mistake was caused by

\*    \*    \*    \*    \*    \*

(b) justifiable reliance upon an innocent misrepresentation of law by the other."

The district court determined that the county's billing of the townships in 1974 and 1976 for costs incurred by the county in

rebuilding the road ($39,568.78) constituted an innocent misrepresentation of law that the townships were responsible to maintain the road. The county does not dispute this conclusion, nor does it dispute the fact that it was the board of county commissioners that made the decision, in 1973, to rebuild the road in anticipation of blacktopping. Although the townships do not seek recovery of payments made to the county pursuant to the billing (apparently barred by the statute of limitations, Section 28–01–16, N.D.C.C.), it is part of the sequence of events which led the townships to believe that they were responsible for maintaining the road. This erroneous belief was reinforced by the chairman of the board's assertion, at the meeting held in the spring of 1976, that the road was the townships' responsibility, and also the board's inaction concerning the townships' request for financial assistance in connection with making the road passable. In our view, the facts justify the townships' reliance upon the county's misrepresentation of law.

The county contends that the existence of a mistake of law does not render the county liable to the townships under the theory of unjust enrichment. It argues that a county's authority to maintain a county road under Section 24–05–17, N.D.C.C., involves the discretionary powers of a county and that recovery in this case allows the townships to accomplish indirectly what they cannot do directly, *i.e.*, maintain county roads and bill the county for the service. The county relies on the Restatement of Restitution, § 41(b)(ii)(iv) (1937),[1] to support its contention that where a township, because of a *mistake* of law, takes it upon itself to improve a highway within the county road system, it does so at its own cost and expense. The county's reliance on Section 41, however, is misplaced. Section 41 does not contemplate the situation, present in the instant case, where a party has been induced to confer a benefit upon another as a result of reliance upon an innocent *misrepresentation* of law by the other. It is not unfair to require a person to pay for services obtained from another as the result of an innocent but material misrepresentation. *See* Restatement of Restitution, § 40(a) (1937).[2]

It was the sole responsibility of the board of county commissioners to maintain the county road system as designated and selected by them. § 24–05–17, N.D.C.C. Construing the word "maintain" in its ordinary sense, we note the following definition: "to keep in a state of repair." Websters Third New International Dictionary, 1362 (1971). Thus, it was the county's responsibility to keep the road in a state of repair. The district court in paragraph nine of its findings of fact found that the road, prior to the spring of 1976, "was dangerous to travel and impassable when wet. The road badly needed gravel." This finding as to the road's state of disrepair adequately supports the additional "finding

---

1. Section 41 of the Restatement reads in pertinent part as follows:

   "§ 41 WHEN RESTITUTION FOR SERVICES IS NOT GRANTED.
   "A person who has rendered services to another or services which have inured to the other's benefit, is not entitled to compensation therefor if the services were rendered:
   (a) without the other's knowledge or reason to know of them, solely because of a mistaken belief
   \* \* \* \* \* \*
   (ii) that the person rendering the services or a third person had a duty to the other or to a third person so to perform; or
   \* \* \* \* \* \*
   (iv) that a relationship existed by virtue of which such services are customarily rendered, with or without compensation;

   (b) with the other's knowledge, solely because of one of the mistaken beliefs stated in Clause (a), where the other had no reason to know of the mistake or that he was expected to pay therefor and had made no manifestation of a promise to pay."

2. Section 40(a) of the Restatement reads in pertinent part as follows:

   "§ 40. WHEN RESTITUTION FOR SERVICES IS GRANTED.
   "A person who has rendered services to another or services which have inured to the benefit of another ... is entitled to restitution therefor if the services were rendered ...:
   (a) because of the fraud or material *misrepresentation* of the other, ..." [Emphasis added.]

of fact" made by the court: "All of the graveling done by the townships was necessary. The county would have had to do the graveling if the townships hadn't done it."

As in *Schoonover*, there is no allegation of fraud, bad faith, collusion, or any other factor which would make it inequitable or unjust to require the county to pay for the reasonable value of the services performed by the townships as a result of the county's misrepresentation of law. In our view, equity and good conscience require that the county pay for the reasonable value of the services performed by the townships.

The judgment is affirmed.

SAND, GIERKE, PEDERSON and VANDE WALLE, JJ., concur.

PEDERSON, Justice, concurring specially.

Considering the issues that have been briefed and argued, I concur in the opinion authored by Chief Justice Erickstad but, when the Legislature enacts inconsistent statutes, the last to be adopted or enacted ought to prevail. See §§ 1–02–09 and 1–02–09.1, NDCC. It appears to me the townships' authority to expend up to one-half of township road taxes on county or state highways (§ 24–06–19, NDCC, last adopted in 1955) prevails over the counties' "sole" responsibility to maintain county roads (§ 24–05–17, NDCC, last adopted in 1943).

It is quite obvious that neither the citizens and taxpayers of Wells County nor of townships in Wells County are enriched (justly or unjustly) in this case. Public officials should not use highway funds for legal battles instead of road repair.